BERTHA L. MILLER, Appellee, v. H. W. MILLER, MRS. MARY MILLER and BLANCHE MILLER, Appellants.

**Husband and wife:** ALIENATION OF AFFECTION: EVIDENCE. In an action for alienation of affection statements made to plaintiff by the other spouse regarding what defendants said, having relation to the conduct of the other party or the reasons for leaving the plaintiff, are admissible; but if there are matters involved which are not admissible the evidence should be carefully guarded by instructions.

**Same.** Plaintiff's testimony that defendants were opposed to the marriage was inadmissible as a conclusion; but if admitted the other party should be allowed to show that defendants never made any statements in his presence indicating ill will towards plaintiff.

**Same.** Where the defendants in an action for alienation of affection admitted that the other party commenced an action for divorce against plaintiff, admission of the original notice, petition and judgment in the divorce action, which charged plaintiff with adultery was erroneous; as there was evidence pro and con in this action on that subject.

**Same.** Evidence that defendants had offered to receive the parties and aid them after a temporary separation was erroneously excluded.

**Same.** A witness should not be permitted to testify to what a party at the other end of the line said in a telephone conversation with another party in his presence; as the same must of necessity be a mere inference from that part of the conversation which the witness heard.

**Same.** Where it appeared that defendants objected to plaintiff having anything to do with a third person they should have been permitted to explain the ground of their objection.

**Same:** ADVICE OF PARENTS: MALICE: BURDEN OF PROOF: INSTRUCTIONS. Parents may honestly advise their children concerning their domestic affairs, even though it may lead to separation; and in an action for alienation of affection the burden is upon the plaintiff to show that the advice given was not in good faith, but actuated by malice.

Same: EVIDENCE: INSTRUCTIONS. Where the plaintiff in an action
8 against her husband's parents for alienation of his affections in-
troduced in evidence the petition in an action for divorce by the
husband charging her with adultery, and other evidence on that
subject was also admitted, such evidence could only be considered
on the subject of conspiracy to alienate the husband's affections,
and the jury should have been so instructed.

*Appeal from the Perry Superior Court.*—HON. JOHN
SHORTLEY, Judge.

MONDAY, MARCH 11, 1912.

ACTION at law to recover damages for alienation of
affections. Trial to a jury, verdict for $10,000, which the
trial court reduced to the sum of $5,000 and for which
amount judgment was rendered for plaintiff. Defendants
appeal.—*Reversed* and *remanded.*

*Howard & Sayers* and *A. D. Howard,* for appellants.

*E. J. Kelly, H. G. Giddings,* and *J. W. Morris,* for
appellee.

DEEMER, J.—Plaintiff is the wife of Frank R. Miller,
and as such she brought this action against the defendants,
who are, respectively, the parents and sister of her hus-
band, to recover damages from them for the alleged aliena-
tion of her husband's affections.

It is charged in the petition that the defendants ma-
liciously conspired and confederated together for the pur-
pose of unlawfully inducing plaintiff's husband to leave
her, and that as a result of their machinations and wrong-
ful and unlawful conduct they induced him to leave her
and to bring an action of divorce against her, and have
since harbored him in their home and encouraged him in
the prosecution of his divorce suit. These charges were

each and all denied by the defendants, and upon the issues thus tendered the case was tried to a jury with the result hitherto stated.

Something like twenty-one errors are assigned as grounds for a reversal of the judgment; but, in view of the final conclusion, we do not find it necessary to consider them all.

I.   Plaintiff was married to Frank R. Miller at Yale, Iowa, June 13, 1906. This was a surprise to Miller's parents; for they did not know of any courtship between the parties, and had no information regarding the proposed marriage until notified by telephone of its consummation on the day it occurred. Plaintiff had been in the Miller home but once prior to the marriage. Defendants Miller and wife at that time lived upon a farm near Herndon, and defendant Blanche Miller, the daughter, who was then married, lived at Cooper. There is testimony to the effect that none of the defendants were pleased with the marriage, and that the mother had selected another mate for her son. However this may be, the young married couple began housekeeping at Yale, where they lived for a few months, when they moved to the town of Herndon, and during the fall of the same year they moved to the Miller farm, near Herndon. Plans were immediately made for the erection of a dwelling for them upon the farm, and the building so planned was commenced in October and completed in due season; defendant H. W. Miller bearing all the expense. Furniture was also selected for this new home and paid for by the father, and he also "stocked" the place for his son. The arrangement was that the young people were to have the use of the farm rent free, so long as they paid the taxes thereon. Here the parties remained until some time in the year 1908, when it became necessary for Mrs. Miller to take her daughter, Blanche, west on account of her health, and after they had gone plaintiff and her husband were induced by the father to sell off the stock on the

place and to turn the farm over to the father. After the sale, plaintiff and her husband went to Spokane, Wash., on a visit, and while there it appears they had considerable trouble over his drinking. Plaintiff finally returned from the west without her husband, and upon her return she went to living with the defendants. Plaintiff says she returned for the purpose of disposing of some household furniture; while defendants say that she left her husband because he (the husband) became suspicious of her conduct with other men, and had concluded not to live with her again. However this may be, it appears that plaintiff's husband sent a telegram from Billings, Mont., to his father, asking the father to meet him in Omaha, Neb. Responding to this, the father went to Omaha and there met his son, who, it seems, had made partial arrangements to work for an automobile concern at the latter place. He refused to come back to Iowa; but, upon the father's promise to buy him an automobile, the son was induced to come back and take up his abode with his wife at the father's home. After living together a short time at the father's home, they moved into a small house constructed for a tenant upon the home farm, and in a few months thereafter moved to the city of Perry, where they occupied a house, purchased by the father, but a few blocks from one which he (the father) had purchased for himself and family. While living in Perry, plaintiff's husband became suspicious of her conduct with other men, and finally, believing that he had found her in a compromising position with one Schiller, he left her, immediately brought an action for divorce, and took up his abode with his parents.

Save as indicated, these facts are practically undisputed; but plaintiff claims that almost from the day of her marriage the defendants individually and collectively, not only objected to the marriage, but criticised and complained about everything she did, charged her with various offenses and immoralities, refused to have anything to do with her,

and finally induced her husband to leave her. Plaintiff also testified to a conversation which she claims to have heard between the three defendants, while all the parties were on a visit to the old Miller home in Illinois some time in the summer of 1909, substantially as follows: "Heard a conversation between Mrs. Miller, Blanche, and H. W. Miller, in Frank's presence, concerning me. This occurred at Mrs. Miller's father's home. I was upstairs. They were on the porch, and my window was right over the porch. I was working upstairs, and I heard my name mentioned. Blanche said, 'If it wasn't for Bertha, things would be so different.' Mrs. Miller said, 'Yes; she is always in the way.' I was getting them into some kind of trouble; that I was so extravagant. Mr. Miller said if Frank didn't find some way of getting rid of me he would; that he was tired of paying my bills. Mrs. Miller said, 'Yes;' the bills were so much that Frank would have to find something to do to keep me. If he couldn't find anything else to do, he would have to go to work on the section. Frank turned around and walked away. That evening I had a conversation with Frank in regard to this same conversation. . . . I told him what I had heard. He said: 'Don't pay any attention to it, Bertha; just pass it up like I do.' " Without referring at this time more specifically to the different incidents relied upon by plaintiff as establishing her cause of action, we proceed immediately to a consideration of some of the errors relied upon for a reversal.

II.   Complaint is made of certain testimony given by plaintiff, over defendants' objections, as to declarations made to her by her husband with reference to what defend-

1. HUSBAND AND WIFE: aliena- tion of affec- tion: evidence.
ants had said to him. In so far as these were explanatory of the husband's conduct, or indicated a reason for his leaving the plaintiff, the declarations were admissible, under the rule announced in *Sexton v. Sexton,* 129 Iowa, 487; *Hardwick*

*v. Hardwick,* 130 Iowa, 233.    But as some of them were
not explanatory of either they were inadmissible, under the
rule announced in *Magers v. Magers,* 143 Iowa, 750.    We
shall not stop at this point to show wherein the court erred
in admitting certain of these declarations.    Again, it is the
universal rule that such testimony, on account of the lia-
bility of a jury to misunderstand its purpose and object,
should be carefully guarded by instructions.    This was done
in the instant case, so that but for other errors in the rec-
ord we would not be disposed to reverse because of the ad-
mission of any of this testimony.

III.    Plaintiff was permitted to testify, in answer to
a question calling for it, that the defendants were opposed
to her marriage to Frank Miller.    This was manifestly a
conclusion, and the safer rule in such cases
is to have the witness detail the facts, leav-
ing the conclusion to the jury.    *Kesselring v. Hummer,* 130
Iowa, 145; *Hicks v. Williams,* 112 Iowa, 691.    But, if
wrong here, the trial court was in error in denying to de-
fendants the right to show by Frank Miller himself, while
on the witness stand, that none of the defendants ever made
any statements in his presence indicating other than the
best of feelings toward the plaintiff.    In one case or the
other, the ruling of the trial court was wrong, and it may
be in both; for in one case the testimony was affirmative in
character and in the other negative.

IV.    Although defendants admitted that plaintiff's
husband had commenced an action of divorce against her,
plaintiff was permitted, over defendants' objections, to in-
troduce in evidence and read to the jury the
original notice with the return of service,
the petition filed in the case, and an order made therein
for temporary alimony.    As this petition charged plaintiff
with adultery, and much testimony was admitted pro and
con upon the question as to whether or not plaintiff had

2. SAME.

3. SAME.

committed adultery, we think it was error to introduce these documents.

V. Defendants offered to show that after the return of plaintiff and her husband from Spokane they were will-

4. SAME.        ing to take them. back on the farm which they had occupied previous to their going West. They were not permitted to do so, and in this we think there was error.

VI. Plaintiff was permitted to testify, over defendants' objections, to certain telephone messages between her husband and some person at the other end of the line, and,

5. SAME.        although she heard but one part of the conversation, was allowed to detail what was said by the person who was being communicated with. Manifestly this was a mere guess or inference.

VII. Defendants offered to show the reasons for their hostility to Dr. Cooper as explanatory of their objections

6. SAME.        to plaintiff's speaking to or having anything to do with him, of which plaintiff had knowledge. But this they were not permitted to do, and in this there was error.

VIII. Coming now to the instructions which are complained of, we find, as a fundamental error therein, the idea that defendants, although the parents and a sister of

7. SAME: advice of parents: malice: burden of proof: instructions.        the plaintiff's husband, might be held liable for alienating the affections of her husband, although they were not actuated by malice in what they did. The rule on this subject is well understood. In *Heisler v. Heisler*, 151 Iowa, 505, we announced the following doctrine: "The law recognizes the right of father or mother to advise their son concerning his domestic affairs, even though this lead to separation, or that separation be effected, without incurring liability for alienation, if the advice be given honestly with a view to the welfare of both parties. *Beisel v. Gerlach*, 221 Pa. 232 (70 Atl. 721, 18 L. R. A. (N. S.) 516);

*Leavell v. Leavell,* 122 Mo. App. 654 (99 S. W. 460);
*Tucker v. Tucker,* 74 Miss. 93 (19 South. 955, 32 L. R.
A. 623); *Tasker v. Stanley,* 153 Mass. 148 (26 N. E. 417,
10 L. R. A. 468); *Oakman v. Belden,* 94 Me. 280 (47 Atl.
553, 80 Am. St. Rep. 396); *Barton v. Barton,* 119 Mo.
App. 507 (94 S. W. 574); *Hutcheson v. Peck,* 5 Johns.
(N. Y.) 196. The motives of the parent are presumed to
have been good until the contrary is made to appear, and
the burden of proof is on the complainant to show, not only
actual alienation of the affections, and that this was caused
by the interference of the parents, but in so doing that
they acted intentionally and maliciously. *Reed v. Reed,* 6
Ind. App. 317 (33 N. E. 638, 51 Am. St. Rep. 310);
*Multer v. Knibbs,* 193 Mass. 556 (79 N. E. 762, 9 L. R.
A. (N. S.) 322, 9 Ann. Cas. 958); *Leavell v. Leavell,
supra.*" There was error in not so instructing the jury,
and also in casting the burden upon the defendants of
showing that in what they did they were acting in good
faith and for reasonable or justifiable cause.

IX. The defendant asked the following instruction:

Certain evidence has been offered upon the part of
plaintiff and defendants upon the question of the finding
of plaintiff, by plaintiff's husband, in the
Schiller apartments in the Breed Block in
company with one Edwin Schiller. This
evidence is submitted to you as bearing on the question of
whether the defendants did in fact conspire and confed-
erate together as alleged, and did in fact, while acting un-
der such conspiracy, so conduct themselves as to bring
about the separation of plaintiff and her husband. And in
considering this question of whether or not the plaintiff's
husband, in the bringing of said divorce suit, was acting
under the influence of defendants, or was actuated by the
conduct of plaintiff at said time, and if you find that plain-
tiff at said time was found by her husband, under such
circumstances, in such a manner as to lead her husband to
believe that she was in said rooms for improper motives,
and for the purpose of having improper relations with Ed-

8. SAME:
evidence:
instructions.

win Schiller, and acting under such belief so formed her husband instituted said divorce proceedings, then the same could be a sufficient explanation of the instituting of said divorce proceedings, and you should not consider the same as tending to show that defendants had conspired or confederated as alleged, or that they had so acted as to cause the bringing of said divorce proceedings; and, in determining whether the plaintiffs husband was led to the commencement of said divorce proceedings by the finding of plaintiff in said rooms, it would not be necessary for you to find that the plaintiff in fact did have improper relations with the said Edwin Schiller.

This was refused, and nothing like it was given in the court's charge to the jury. We think it should have been given for reasons apparent upon a moment's reflection. The petition for divorce was in the case, and much testimony pro and con was taken upon the issue as to whether or not plaintiff had in fact committed the adultery charged. Without such instruction, the jury was likely to try the divorce case, rather than the action for alienation. Other matters argued need not be considered; for they are not likely to arise upon a retrial.

It is enough to say in conclusion that the testimony tending to show a liability on the part of some of the defendants is very weak; but we think there was enough to take the case to a jury. But, for the errors pointed out, the judgment must be reversed and the cause remanded.— *Reversed* and *remanded*.