WILBUR G. POOLEY, Appellee, v. O. J. DUTTON, Appellant, and MRS. HATTIE W. DUTTON.

**Husband and wife:** ALIENATION OF AFFECTION: EVIDENCE. Whenever it becomes material to show the motive, intent and mental attitude of a person, or to ascertain the reason or influences which have induced certain action or conduct on his part, such person may testify di-

rectly thereto, even though the testimony is to some degree in the nature of a conclusion. Thus in an action by a husband against the parents of his wife for alienating her affections, she may testify directly to her mental and emotional attitude toward her husband and the causes producing the same.

**Same:** EVIDENCE: CONSPIRACY. Where plaintiff's action against the parents of his wife for alienating her affections was based upon a conspiracy between the parents, evidence of what the father said and did after the marriage was admissible for the purpose of showing malice and a conspiracy, but that he previously objected to the marriage and even threatened to disinherit the daughter in case of marriage was inadmissible; as he was strictly within his rights in using all reasonable efforts to avert a marriage which he believed would result unhappily.

**Same:** LIABILITY OF ONE PARENT FOR ACTS OF THE OTHER. One parent is not responsible for the acts and conduct of the other in alienating the affections of a married daughter from her husband, in the absence of a showing of conspiracy to bring about the separation.

**Same:** ADVISE OF PARENTS: MALICE. It is the right of a parent to advise his daughter as to her marital affairs and he is not answerable to her husband for so doing, even though his advice may be unwise, unless he acts maliciously and thereby alienates her affections from her husband; and the burden of showing malice is on the husband, which cannot be established by mere proof that the parent counseled and advised the wife, honestly believing that such advice was for her best interests.

*Appeal from Greene District Court.*—Hon. M. E. Hutchinson, Judge.

Tuesday, May 12, 1914.

Action at law to recover damages on account of the alleged wrongful acts of the defendants in conspiring to alienate from the plaintiff the affections of his wife. There was a verdict and judgment for the plaintiff, and the defendant O. J. Dutton appeals. The facts, so far as material, are stated in the opinion.—*Reversed.*

*W. W. Turner* and *Wilson & Albert,* for appellant.

*A. D. Howard* and *Church & McCully,* for appellee.

WEAVER, J.—Plaintiff and Pauline Dutton were married on July 30, 1910. Pauline is the daughter of the defendants, O. J. Dutton and wife, and up to the time of her marriage lived with her parents at their home in Grand Junction, Iowa. Plaintiff began paying some attention to Pauline in the year 1909, and at first her parents do not seem to have opposed it, but later, apparently becoming convinced that he was not a suitable person, they discouraged the intimacy between the young people, and used their influence with their daughter to dissuade her from marriage. As usual in such cases, this advice seems to have had little effect, and on the date named plaintiff and Pauline clandestinely met in Des Moines, where the marriage ceremony was performed. On the evening of that day they called up the Dutton home by telephone and reported their marriage. The precise conversation thus had between plaintiff and his wife, on the one hand and defendants, on the other, is a matter of dispute, but it is reasonably clear that Mrs. Dutton became much excited, upbraided the young people for their conduct, and probably demanded that her daughter come home, which she declined to do. Plaintiff and Pauline spent several weeks in various hotels at different places, after which Pauline returned to her parents. Plaintiff also soon came back to Grand Junction or vicinity, calling frequently on his wife. They went out together and visited various towns, plaintiff's ostensible purpose being to find suitable employment or to find a location for establishing himself in business as a pharmacist, an object he did not succeed in accomplishing. From an early date in their married life differences arose between the young husband and wife, and these gradually assumed greater proportions, until the separation became complete, and on April 27, 1911, a little less than nine months after their marriage, this action was begun against the wife's parents.

The petition is unnecessarily prolix, much of the matter set out being allegations of evidence, rather than ultimate facts. The substance of the complaint is that defendants,

father and mother of Pauline, conspired together to alienate her affections from her husband, and to that end they misrepresented and villified him to her and in her presence, and in various ways brought to bear upon her their influence and powers of persuasion to induce her to repudiate him, and did, in fact, thereby lead and induce her to withdraw from him her affection and confidence and to refuse to live with him.

The defendants answered separately denying all plaintiff's allegations of wrong on their part, and saying that, if plaintiff's wife had ceased to love and care for him, it was because of his own misconduct and maltreatment of her.

The jury returned a verdict for the plaintiff in the sum of $11,000, of which sum he was required by the trial court to remit one-half, or $5,500, as a condition of avoiding a new trial. The defendant O. J. Dutton alone appeals.

The record of testimony is voluminous, and we shall make no attempt at its recital, except so far as it may appear necessary for the proper disposal of the principal assignments of error on which a reversal is sought. Of these the following appear to be the most material:

I. It is the essence of plaintiff's complaint that his wife has become alienated from him, and has ceased to love and respect him, and that this condition is the result of the wrongful interference of the appellant.

1. HUSBAND AND WIFE: alienation of affection: evidence. This is denied by the appellant, who further says that, if there be any alienation, it is due to the plaintiff's own fault in the treatment of his wife. The mental and emotional attitude of the wife toward her husband and the cause thereof were therefore legitimate subjects of inquiry before the jury. They could be established by evidence either direct or circumstantial. Probably the only person who could give direct testimony as to the actual state of the wife's affections or explain the real cause of their alienation from her husband was the wife herself. In support of defendant's theory that, if plaintiff had lost the affection and regard of his wife, it was chargeable to his mistreat-

ment of her, the wife testified that within a very short time after their marriage plaintiff began falsely accusing her of flirting with other men, declared to her that her mother was not a good woman, falsely charged her with murdering his child, wrote her a letter reiterating his charges, and saying that he hated her, and, with reference to these matters, she was asked, in substance, to state the effect thereof upon her affection for her husband. All testimony of this nature was excluded, upon the objection of plaintiff, as being incompetent, irrelevant, and immaterial, and calling for a conclusion, rather than a fact, and asking the witness ''to pass upon a jury question.'' So also, plaintiff having testified that his wife received numerous letters from her mother, in which he was referred to in contemptuous and abusive terms, and that these communications appeared to make her discontented and unhappy and caused her to weep, the wife, being examined upon part of defendants, denied the truth of most of these statements. Pursuing their inquiry concerning the correspondence between her and her mother, she was asked by counsel for defendant whether the letters so received by her did, in fact, affect her feelings toward her husband. Answer to this question was also excluded, as being a conclusion merely, and not a material fact to which the witness could be permitted to testify.

All these exceptions may be considered together. We are of the opinion that all the testimony thus excluded was both competent and material. Indeed, the rule making it admissible is too well settled to admit of serious doubt. It has not often arisen in this state upon precisely similar facts, but the principle here approved has been often recognized. Stated generally, the rule is that, whenever it becomes material, in determining rights involved in litigation, to show the motive, intent, or other mental operation of any person, or to ascertain the reasons or influences which have induced certain action or conduct on his part, such person may testify directly thereto, even though such testimony may partake in some degree of the

nature of a conclusion. *City Bank v. Jordan,* 139 Iowa, 499;
1 Wigmore on Evidence, section 581; 2 Elliott's Evidence,
section 825; *Heap v. Parrish,* 104 Ind. 39 (3 N. E. 549);
*Flam v. Lee,* 116 Iowa, 289; *Watson v. Cheshire,* 18 Iowa, 211;
*Frost v. Rosecrans,* 66 Iowa, 405; *Bartlett v. Falk,* 110 Iowa,
346; *Spalding v. Lowe,* 56 Mich. 374 (23 N. W. 46); *McCor-
mick v. Hiatt,* 4 Neb. (Unof.) 587 (95 N. W. 627); *Gout v.
Stewart,* 96 Minn. 230 (104 N. W. 966). Directly in point
is the case of *Millspaugh v. Potter,* 62 Misc. Rep. 521 (71 N. Y.
Supp. 134). See, also, *Childs v. Muckler,* 105 Iowa, 281;
*Tasker v. Stanley,* 153 Mass. 148 (26 N. E. 417, 10 L. R.
A. 468).

It is true the intent or motive or the reasons influencing
a person to any given act may be, and often are, shown by the
circumstances attending and characterizing the act itself;
but, if the fact be material upon the issues joined, it may also
be established by the direct testimony of such person. He
alone knows the truth with respect to such matter, and to
refuse his testimony is to reject the only direct proof available,
and decide the fact solely as a matter of inference from ex-
traneous circumstances. The excluded testimony was not
only competent, but very material also. That plaintiff's wife
had ceased to hold him in affectionate regard is quite evident,
but proof of this fact alone is manifestly insufficient to entitle
him to a verdict. The defendants can be made liable only
upon a showing that this result has been caused by wrongful
and malicious interference on defendants' part. It was their
right in defense to show, if they could, not only that plaintiff
had ill-used his wife, but also that such treatment had caused
a withdrawal of her trust, confidence and love. The effect of
the ruling complained of was to admit evidence of the alleged
facts of ill treatment, but to exclude proof of the more im-
portant fact as to the effect of such treatment upon the attitude
of the wife toward her husband. The error must be presumed
to have been prejudicial to the defense.

II. Over the objection of the defendant, plaintiff was

permitted to introduce testimony to the effect that, when he first began waiting upon Pauline, her parents interposed no objection thereto, but that about six months before the marriage their attitude changed, and they forbade him entrance to the home.   Plaintiff

2. SAME: evidence: conspiracy.

was also allowed to tell the jury that in February, before the marriage, he heard the defendants' threaten to disinherit the daughter if she married him.   Error is assigned upon the admission of this evidence.   In this connection it may also be noted that in its instructions upon the law applicable to plaintiff's claim of conspiracy between the defendants to alienate his wife's affections the court said to the jury: "In determining the motive and intent of each defendant, you may consider everything said and done by said defendant upon any and all occasions as shown by the evidence."   This charge is excepted to, because it permits and authorizes the jury to find the existence of the alleged conspiracy and of its malicious purpose not only from the acts and statements of the parents after the marriage, but also from their objections to such union long before the marriage took place.   We are of the view that this exception is well taken.   Proof of the mere fact that the parents of the girl were opposed to the marriage may not have been improper, although in itself it has no tendency whatever to establish the existence of a conspiracy between them after the marriage to bring about a separation of the parties thereto.   It was the right of the father and mother of the girl to expostulate with their daughter and use their influence to avert the marriage.   Indeed, if they sincerely believed that the marriage could not be a happy one, it was their solemn duty to oppose it by every reasonable effort within their power.   If, in so doing, they emphasized their objection by a warning that such marriage would result in the daughter's exclusion from a share in their bounty, whatever one may think of the wisdom of such an argument, they were strictly within their legal rights, and evidence thereof affords no grounds for imputing malice on their part toward the

plaintiff after the marriage had, in fact, taken place. If plaintiff has any cause for action, it is for wrongs suffered by him at the hands of the defendants after the marriage. Such is the allegation of the petition, and without it no recovery could be had. It is quite evident from the record that his main reliance for obtaining and upholding a recovery against the father of his wife is first to establish the alleged conspiracy, and thereby make the appellant legally responsible for the alleged wrongful interference of the mother, to whose conduct in the premises the evidence is very largely directed. In attempting to sustain this charge, it is, of course, entirely proper to show what the appellant said and did after plaintiff's marital rights had accrued, but it would be the extreme of injustice to ground a finding of malice and conspiracy after the marriage upon the fact that before it took place he did just what he might lawfully do. The testimony discloses nothing whatever in the conduct of the appellant prior to the marriage which was not clearly within his province as father of the girl, nor any circumstance which would justify the jury in finding that in so doing he was actuated by malice. We are of the opinion therefore that this testimony should have been excluded, and that the instruction which allowed the jury to consider such testimony as tending to show malice on the part of defendants or the existence of a conspiracy between them after the marriage should not have been given.

III. Appellant further excepts to the sufficiency of the evidence to sustain the verdict against him. It being necessary, for reasons already given, to order a new trial, and as the testimony on another hearing may vary materially from that which is presented by this record, we shall not discuss the merits of the showing in this respect, except as it may seem advisable to indicate our view upon the nature of the issue which is to be considered and the law applicable thereto on another trial, assuming, of course, that the issues are unchanged.

It is to be borne in mind that the mother has not ap-

pealed from the judgment against her, and, so far as she is concerned, the case is at an end.

If the father is also to be held liable, it must be because it is found that he himself wrongfully and maliciously interfered between his daughter and her husband, and by his advice, persuasion, or influence maliciously exercised, alienated her from her love and loyalty to her husband. He is in no manner to be held liable or responsible for the acts, words or conduct of the mother, or for the influence, if any, exercised by the mother over the daughter, unless it be further affirmatively established by the evidence that there was a conspiracy or combination between the mother and himself to wrongfully and maliciously influence and bring about a separation between the plaintiff and his wife, and that the wrongful acts were done and wrongful influence was exercised by the mother in pursuance or furtherance of the conspiracy so formed or existing. If such conspiracy be found, then, of course, the acts done and the words said by either in carrying out the common design are the acts and words of both.

*3. SAME: liability of one parent for acts of the other.*

For the purposes of this appeal, it may be conceded that there was evidence for the jury upon the issues submitted, but it is equally true that very much of the matter introduced into the record by plaintiff as to the conduct of the appellant is wholly consistent with perfect good faith on the part of the latter. The court properly instructed the jury that the defendants, as parents, had a right to give advice and counsel to their daughter concerning her relations with her husband, and to furnish her a home and shelter, even though their influence so exerted had the effect to cause a separation, and that no damages were recoverable against them, unless it should be affirmatively found that they acted in bad faith and with malice. It is difficult, however, to avoid the impression from a reading of the record that this rule failed to attract the attention of the jurors. This impression is emphasized by the return of a verdict of $11,0000, which is so out of proportion

to the apparent merits of the case at its best as to evidence a failure to give due effect to the instructions, or the existence of passion ·or prejudice inconsistent with the theory of a fair and impartial consideration of all the testimony.

As already suggested, the parent may rightfully advise his daughter as to her domestic and .marital affairs, and, whether such advice be wise or unwise, he is not responsi-

4. SAME: advice of parents: malice.

ble in damages to her husband, unless he is actuated by malice. The burden of proving malice in such case is upon the husband. It follows of necessity that malice cannot be inferred from the mere fact that such counsel or advice is given, but must be established by proof of other facts or circumstances from which the inference of bad faith or malevolent purpose may fairly be drawn. Upon this subject the following language of Chancellor Kent in *Hutcheson v. Peck*, 5 Johns (N. Y.) 196, has often been quoted with approval:

A father's house is always open to his children; and, whether they be married or unmarried, it is still to them a refuge from evil and a consolation in distress. Natural affection establishes and consecrates this asylum. The father is under even a legal obligation to maintain his children and grandchildren, if he be competent, and they unable to maintain themselves; and, according to Lord Coke, it is 'nature's profession to assist, maintain, and console the child.' I should require, therefore, more proof to sustain the action against the father than against a stranger. It ought to appear either that he detains the wife against her will, or that he entices her away from her husband, from improper motives. Bad or unworthy motives cannot be presumed. They ought to be positively shown, or necessarily deduced from the facts and circumstances detailed.

In the same case it was also said by Spencer, J., that, even though the amount of the verdict returned might not be held excessive, as a matter of law, it was still within the province of the court, under the peculiar circumstances, to re-

gard the amount of damages so allowed in exercising its discretion in awarding a new trial.

Upon the same subject the Indiana court has said:

All legitimate presumptions, in such cases, must be that the parent will act only for the best interests of the child. The law recognizes the right of the parent, in such cases, to advise the son or daughter; and, when such advice is given in good faith, and results in a separation, the act does not give the injured party a right of action. . . . The motives of the parent are presumed good until the contrary is made to appear. (*Reed v. Reed*, 6 Ind. App. 317, 33 N. E. 638, 51 Am. St. Rep. 310.)

It has also been held that the use of violent language and denunciation on the part of a parent upon learning of the clandestine marriage of his child to a person of whom he disapproved is not of itself sufficient to sustain a charge of malice in an action of this nature. *Rubenstein v. Rubenstein*, 60 App. Div. 238 (69 N. Y. Supp. 1067); *White v. Ross*, 47 Mich. 172 (10 N. W. 188).

In *Okman v. Belden*, 94 Me. 280 (47 Atl. 553, 80 Am. St. Rep. 396), after stating the right of a parent to urge the daughter to leave her husband if he believes it necessary to her health, happiness or peace of mind, the court adds: "Whether the persuasion or the argument is proper and reasonable, under the conditions presented to the parent's mind, is also always to be considered. It may turn out that the parent acted upon mistaken premises, or upon false information, or his advice and his interference may have been unfortunate; still, we repeat, if he acts in good faith for the daughter's good, upon reasonable grounds of belief, he is not liable to the husband."

The foregoing precedents fairly indicate the trend of the authorities. See, also, *Heisler v. Heisler*, 151 Iowa, 503; *Busenbark v. Busenbark*, 150 Iowa, 7; *Miller v. Miller*, 154 Iowa, 344; *Beisel v. Gerlach*, 221 Pa. 232 (70 Atl. 721, 18 L. R. A. [N. S.] 516).

They do not, of course, excuse, much less justify, the parents of a wife in enticing her from her husband to gratify their spite, malice or ill will toward him, but they do sustain the right of the father and mother to give a married daughter such advice and counsel as they honestly believe is for her best interest, and in so doing they incur no liability to the husband, even though their action is unwise and productive of harm rather than good.

With these suggestions as to the general principles which should govern the trial, submission, and determination of issues such as are here presented, we think it unnecessary to discuss other questions argued by counsel. For the reasons stated, the judgment below against the appellant O. J. Dutton is reversed, and the cause is remanded for a new trial.—*Reversed.*

LADD, C. J., and EVANS and PRESTON, JJ., concur.