BERYL STILWELL, Appellee, v. J. H. STILWELL et al.,
Appellants.

APPEAL AND ERROR: Review—Brief Points. Appellate review is
1  limited to what is presented by the "Brief Points."

APPEAL AND ERROR: Harmless Error—Evidence Received With-
2  out Objection. Where no objection was made to reception of
testimony, nor motion made to strike out the same, its exclu-
sion is not error.

TRIAL: Reception of Evidence—Rejection—Inadmissible for Pur-
3  pose Offered. Evidence is properly excluded which is not ad-
missible for the purpose for which counsel declares it is offered.

HUSBAND AND WIFE: Evidence—Alienation of Affections—Im-
4  materiality of Testimony. Testimony of a third person that he
had talked with the husband as to his conduct towards his wife,
and as to what sort of a girl she was, and that she was a nice
and pleasant little lady, there being no showing that the defend-
ants in the alienation suit had anything to do with the witness'
going to the husband, did not in any degree tend to prove that
the defendants did anything towards promoting the continuance
of the marital relation, or to bring about proper treatment of
the wife by the husband.

APPEAL AND ERROR: Review—Waiver of Objections by Not Rais-
5  ing in Brief Points. Action of trial court in rejecting testimony
will not be considered on appeal, where not in the class covered
by the brief points.

. USBAND AND WIFE: Evidence—Alienation of Affections—Imma-
6  terial Testimony. Where, in an action by the wife against the
parents of her husband for the alienation of his affections, one
of the defendants had testified to having told the wife that
rumor accused her of unchastity, and that the husband had said
it was a lie, an explanation by the witness why she told the
matter would not tend to show that the witness was making an
effort with either the husband or the wife to induce either or
both of them to continue the marital relations.

EVIDENCE: Husband and Wife—Alienation of Affections—Mental
7  Attitude. In an alienation suit, the wife may testify directly
to her mental and emotional attitude toward her husband, and
causes producing the same. Therefore, *held* that, in such an ac-

tion by the wife against the husband's parents, it was error to strike out testimony of one of the defendants as a witness that she was willing, at the time the wife was taken from defendants' home, for her to remain.

**HUSBAND AND WIFE:** Alienation of Affections—Grounds—Design and Malice. There can be no recovery by the wife against the parents of her husband for the alienation of his affections unless they designed and intended to effect an alienation and separation, and what they did in furtherance of this design accomplished the alienation and separation; and malice must be shown. The parents are within their rights in giving advice to their children, even after the marriage of the children, and if the advice, being merely indiscreet, tends to promote an estrangement, the parents are within their rights in giving such advice, unless prompted by malice.

**APPEAL AND ERROR:** Review. In determining whether there was a case for the jury, the appellate court cannot interfere with the verdict of the jury unless it can say, as a matter of law, that the proof adduced was insufficient to sustain the verdict; and the narrow question is, Could the jury find that the necessary elements in the proof have been established?

**TRIAL:** Directed Verdict—Strongest Inferences Reasonably Deducible from Most Favorable Evidence. As against a motion to direct a verdict for the defendant, the plaintiff is entitled to have taken as true the evidence adduced, and to have the benefit of the strongest inferences reasonably deducible from such evidence.

**HUSBAND AND WIFE:** Alienation of Affections—Circumstantial Evidence—Nature of Proof. An alienation suit can be established by circumstantial evidence, by facts that do not make the whole case, aided by just inferences from these facts in combination with others.

**HUSBAND AND WIFE:** Alienation of Affections—Sufficiency of Evidence. Evidence reviewed, and held sufficient to sustain a verdict of the jury in favor of a wife against the parents of her husband for alienation of affections.

**TRIAL:** Instructions—Form, Requisites, and Sufficiency—Correct but Not Explicit—Waiver. The remedy for an instruction that merely lacks in fullness is to offer instructions supplying what is lacking.

**APPEAL AND ERROR:** Review—Instructions—Insufficient Assignment. It is not the duty of the appellate court to examine the

charge of eight pages as a whole, to ascertain whether, somewhere in it, there is an instruction which offends against a rule asserted in a brief point.

**NEW TRIAL:** Grounds—Newly Discovered Evidence—Misconduct of Jury. The court did not err in overruling a motion for a new trial on the ground of newly discovered evidence, in that, during an adjournment of the trial, the plaintiff engaged in a conversation in a low tone with one of the jurors, where there was no showing that the defendants were not advised of this before the trial closed, and the matter was not called to the attention of the court before the motion for the new trial was filed; as it was their duty to make objection *then*, and to ask an inquiry into what was said and done, and to make application to have the panel dismissed and a new trial *then* ordered.

**NEW TRIAL:** Grounds—Newly Discovered Evidence—Insufficient Showing—Lack of Diligence. Such diligence as would make it an abuse of the discretion of the court to overrule a motion for new trial on the ground of newly discovered evidence is not shown by an affidavit stating "that, prior to the trial, I made all the investigation that I could, in effort to find testimony to present at said trial, and then I did not learn of the matters and things hereinafter set forth until the close of the trial."

*Appeal from Marion District Court.*—Lorin N. Hays, Judge.

May 15, 1919.

The plaintiff is married to the son of the defendants. She charges that, by divers means, the defendants alienated the affections of plaintiff's husband from her, and caused him to separate from her and to refuse to furnish her a home. From verdict and judgment in her favor, the defendants appeal.—*Affirmed.*

*L. D. Teter,* for appellants.

*W. G. Vander Ploeg,* for appellee.

Salinger, J.—I. Complaint is made of the reception and exclusion of testimony. It is settled in this court that appellate review is limited on what is presented by the

"Brief Points." But as to some of the

**1. APPEAL AND ERROR: review: brief points.** matters complained of, it is clear that, with or without reference to the brief points, the complaint is not well made.

The father of the plaintiff testified:

"My daughter told me that she would be willing to live anywhere, even in a tent, if he would get one away from them."

**2. APPEAL AND ERROR: harmless error: evidence received without objection.** No objection was made to the reception of this testimony, nor was there motion to strike the same out.

I. W. Stilwell, a witness for the defendants, was asked to state whether or not the witness ever talked with the husband of the plaintiff "with reference to his conduct towards his wife, and in reference to her; what sort of a girl she was, and

**3. TRIAL: reception of evidence: rejection: inadmissible for purpose offered.** that she was a nice and pleasant little lady." On objection's being made that this was incompetent, immaterial, and hearsay, unless shown to have been made in the presence of the plaintiff, the court inquired what counsel claimed for this, and was answered the claim was the question was a proper one because "the defendants have the right to show anything they ever did towards inducing their son to live with the plaintiff and treat the plaintiff well." Thereupon, the court sustained the objection made, with a statement that, if the witness were testifying to what the demeanor of the husband was toward his wife, it would be competent, but that what some third person said, or what "he" might have said to some third person, is not competent. It is not necessary to determine whether this be or be not the best reason that can be advanced for refusing to let this witness answer this question. We are content with sustaining the ruling because, clearly, the proposed testimony was not admis-

sible for the purpose of which counsel declared it was be-
ing offered.   How could the fact that the
witness had talked with the husband with
reference to the conduct of the husband
towards the plaintiff, and talked with the
husband with reference to the wife, and
talked with him as to what sort of a girl
she was, and in the talk said that she was a nice and
pleasant little lady, in any way tend to show that the de-
fendants did something towards inducing their son to
live with the plaintiff and treat her well?   There is no
evidence that the defendants induced the witness to speak
to the husband.   To reverse for excluding this testimony,
we would be compelled to hold that, if a third person
talked with the husband as to his conduct toward his wife
and with reference to the wife, and talked with the hus-
band as to what sort of girl the wife was, and said that
she was a nice and pleasant little lady, this would be evi-
dence from which a jury could find that the defendants
had made an effort to induce their son to live with and
treat his wife well.   Manifestly, such testimony does not in,
any degree tend to prove that the defendants did anything
towards promoting the continuance of the marital rela-
tion, or to bring about proper treatment of the plaintiff.
To say the least, the objection that the proposed testimony
was immaterial is well taken.

4. HUSBAND AND
WIFE: evi-
dence: aliena-
tion of affec-
tions: imma-
teriality of
testimony.

1-a

We now turn to the only brief point dealing with rul-
ing on testimony.   It is as follows:

"Defendants may show what they did to induce their
son to live with plaintiff.   What defendants said to ac-
complish the same purpose is a part of the *res gestae,* and
is equally admissible.   The fact that the statements were
not made in the presence of the plaintiff is wholly imma-
terial.   Such testimony is substantive of verbal acts tend-

ing to show that defendants were trying to induce the son to live with plaintiff."

It is manifest this makes no complaint of the *reception* of testimony, and is an assertion that there was error in rejecting testimony for reasons stated. This disposes of the one assignment that goes to the reception of testimony, to wit, allowing the father of the plaintiff to testify, in answer to a question of why plaintiff left the home of defendants, that she did so "on account of the treatment she was getting." It may be assumed that the objections lodged to this testimony were well taken. But the appellants may waive error in that regard. They did so by limiting the brief points to the *rejection* of testimony.

1-b

We have already disposed of the refusal to let the witness I. W. Stilwell detail what talk he had had with the husband of plaintiff. It is not amiss to add that this refusal may not be reviewed, because what was ruled out is not in the class covered by the brief point.

5. APPEAL AND ERROR: review: waiver of objections by not raising in brief points.

1-c

The plaintiff testified that, the morning after her baby was born, defendant Mrs. Sarah Stilwell "said she had heard, she said she told Deny something; and I said, 'What did he say?' and she said Deny said it was a damned lie; and I said, 'What did you tell him?' and she said, 'I told him what a neighbor woman told me: that you had been intimate with another man; and Deny said it was a damned lie.'" On cross-examination, Mrs. Sarah Stilwell said, "I told Beryl the story that was going around that she had been intimate with another man." On redirect, she was asked to explain why she spoke to plaintiff "concerning these rumors that were being circulated." To this,

6. HUSBAND AND WIFE: evidence: alienation of affections: immaterial testimony.

objection was made that it was incompetent. It was sustained, with the statement that the judge did not believe it was competent, "without she explained it to Beryl." This, once again, may not be the best assignable reason for the ruling. But the ruling was right. The brief point limits review to the claim that there were exclusions of matters which tended to show defendants did or tried to do something which was calculated to induce their son to live with plaintiff. If the matter excluded had no tendency to show anything of this kind, the exclusion was manifestly right. It will be noticed the question did not ask for an explanation of why the mother had communicated these rumors to her son. The exact complaint is that she was not permitted to explain why she communicated these rumors to the son's wife. It does not even appear that, at the time when the mother spoke to his wife regarding these rumors, the son knew the mother intended thus to speak. What possible explanation as to why the mother told plaintiff that rumor accused her of unchastity would tend to show that the mother was making an effort with either husband or wife to induce either or both to continue the marital relation and to live in mutual affection? As to how any possible explanation of why this rumor was told to plaintiff could show a desire on part of the teller that the couple should not be estranged, one must enter the realm of imaginative speculation—the realm of pure fancy. If there ever was a case wherein to apply the rule that no exclusion will be reviewed without some indication of why the testimony proposed was proper and relevant, this is such a case. We have read *Bailey v. Bailey,* 94 Iowa 598, at 603, and *Price v. Price,* 91 Iowa 693, and *Miller v. Miller,* 154 Iowa 344, at 350, with great care. In neither of them is anything ruled which conflicts with our disposition of exclusions thus far dealt with.

1-d

Defendant Sarah Stilwell was asked whether, at the time the parents of plaintiff took plaintiff and her baby away, she, the witness, was willing for plaintiff to remain in witness' home, and answered, "Yes."

**7. EVIDENCE: husband and wife: alienation of affections: mental attitude.** This answer was stricken out for being incompetent. This ruling raises the most serious question that arises on the taking of testimony. In *Miller v. Miller*, 154 Iowa 344, we held it was error to exclude testimony that, after husband and wife had taken a trip, the parents of the husband were willing to allow them to occupy the house on the home farm which they had occupied before taking the trip. In *Pooley v. Dutton*, 165 Iowa 745, we declare that, whenever it becomes material to show the motive, intent, and mental attitude of a person, such person may testify directly thereto, though the testimony is to some degree in the nature of a conclusion. We therefore held that, in an alienation suit, the wife might testify directly to her mental and emotional attitude towards her husband, and the causes producing the same. Both on reason and on authority, this testimony given by Mrs. Stilwell should not have been stricken out. But the question remains whether its exclusion was prejudicial.

It will be noted the answer did not go beyond disclosing what was the mental attitude of the witness toward the plaintiff at the time spoken to. If what was stricken out is, in effect, not more than a repetition of what was not stricken out, then the striking out worked no prejudice. Is not that the situation? The witness was allowed to say what tends to show not only that she was willing to have plaintiff to remain in the home of the witness at the time when plaintiff and her baby were taken away, but that she was thus willing at all times. She was permitted to testify that, from the time of the marriage

until the 9th of February, the couple were at the home of
the witness the larger portion of the time; that, about the
9th of February, plaintiff came to the house of the witness
and remained all the time until she and her baby were
taken away; that witness had always spoken kindly to
plaintiff; treated her as well as she knew how; never
spoke harshly to her; never scolded her on account of
things either done or omitted; and treated her just like one
of her own children.  She was permitted to say that her
son objected to the taking away of the wife and baby; said
they had as good a home as he was able to offer at the
time, and that he would make a home for them when he
could do better.  She was permitted to say that both her
son and her husband said that plaintiff might remain;
that the husband of the witness told plaintiff she could
have a home there just as long as she wanted it, and that
she was perfectly welcome.  She said nothing indicating
that the expressions and sentiments of her son and her
husband were not her own.  She states what these two
said, in a way to indicate that what was said met with her
approval and voiced her sentiments.  In one word, while
she was not permitted to say, in terms, that, at the time
when the plaintiff and her baby went away, witness had
the mental attitude of being willing that plaintiff should
remain, she had said, over and again, what, if believed,
carried to the jury her claim that she was at all times will-
ing plaintiff should remain in the home of the witness.  It
would seem the most that striking out of this one answer
accomplished was to strike out a limited repetition of what
the same witness had already fully testified to.  It is against
reason to believe the verdict would have been different,
had this express affirmation of her mental state in this
regard at this particular time been permitted to remain in
the record.  The only way that the striking out could have
been prejudicial is on the theory that, while the jury did

not believe the indirect testimony of this witness to the effect that she was willing to have plaintiff remain, it would have believed the direct statement to that effect had it not been stricken from the record, and would have changed its verdict because of such belief. This is a strained theory. We are satisfied that no prejudice was worked by striking out this answer.

II. Was it error to overrule a motion to direct verdict for defendants?

We held, in *Bruce v. Galvin*, 183 Iowa 145, that the evidence in that case was insufficient to warrant a submission to the jury, and that was our holding as to the evidence in *Maloney v. Phillips*, 118 Iowa

8. HUSBAND AND WIFE: alienation of affections: grounds: design and malice.

9. In *Heisler v. Heisler*, 151 Iowa 503, at 508, we held the evidence sufficient to make a case for a jury as to one defendant and insufficient to make one against the other.

In *Avery v. Avery*, 110 Iowa 741, it is decided that judgment for alienation cannot be sustained on mere evidence that defendant disregarded the plaintiff, took occasion to show it in petty ways, and that, on a declaration by defendant that plaintiff had better go, she left her home, against the remonstrances of her husband. In *Corrick v. Dunham*, 147 Iowa 320, we ruled that there is not a sufficient showing of malice by mere evidence that defendants were sorrowful and indignant, and that they manifested ill will toward plaintiff when they learned he had secretly married their daughter. In *Rice v. Rice*, 104 Mich. 371, it is held insufficient to sustain a verdict because a father objected to the marriage of the son to plaintiff on the ground that she belonged to a certain church, and afterwards advised the son it would be unwise for him to live with plaintiff if she again joined that church.

On the other hand, we held, in *Price v. Price*, 91 Iowa 693, on evidence which, in its total aspect, is not more sub-

stantial or persuasive than that found in this record, that there was a case for a jury; and likewise in *Miller v. Miller,* 154 Iowa 344, wherein we couple the ultimate conclusion with the statement "that the testimony tending to show the liability on the part of some of the defendants is very weak."

Fact decisions make weak precedents; necessarily, the facts in the cited case are never quite the same as in the case on trial. All that can be accomplished by citations is to furnish a general standard. That is to say, citations are of some value if it appear from them that, on proof in essence neither stronger nor weaker than that present in the cited cases, it has been held either that there was or that there was not a case for a jury. In the last analysis, then, case law gives us no aid beyond furnishing a general measuring stick wherefrom to determine whether the instant case has enough support to go to a jury.

III. As to some of the things essential to be proved, there can be no dispute. The appellants are right in saying there should be no recovery against them unless there be evidence that they designed and intended to effect an alienation, and that what they did in furtherance of this design accomplished the alienation and separation. See *Maloney v. Phillips,* 118 Iowa 9; *Bailey v. Bailey,* 94 Iowa 598, at 602; *Bruce v. Galvin,* 183 Iowa 145. It is true there must be evidence showing malice. *Pooley v. Dutton,* 165 Iowa 745; *Heisler v. Heisler,* 151 Iowa 503; *Miller v. Miller,* 154 Iowa 344. The same cases hold that, even after marriage, the parents may advise their children, and that, if the advice be merely indiscreet, then, though it does tend to promote an estrangement in the married couple, the parents are within their rights in giving such advice, unless the advice is prompted by malice. See, also, *Busenbark v. Busenbark,* 150 Iowa 7. It is true that the mere giving of improper parental advice is not alone suf-

ficient to establish the necessary malice. *Busenbark v. Busenbark,* supra. But one must not confuse what is necessary to prove a case with the rules of appellate review that govern an inquiry into whether there is enough evidence to send a case to a jury, or enough evidence to sustain its verdict in favor of the party having the burden of proof.

Assume that, in a suit for alienation against the parents of one spouse, the evidence of malice and improper motive must be strong, or at least stronger than if the suit were against a stranger. But so on an indictment charging murder in the first degree, it is essential to prove specific intent to kill, beyond reasonable doubt. That, however, is, in a sense, a trial rule. It is the duty of the court to tell the jury that it must not convict unless the proof be of that degree. It is the duty of the jury to acquit unless it finds proof of the required potency. But all that does not change what is for appellate review. When the jury is properly charged as to what is requisite proof, and returns a verdict for the party having the burden of proof, we do not try, as a question of fact, whether the proof is of the required strength. In determining whether there was a case for a jury, we cannot interfere with the finding of the jury because we are of opinion that, were we sitting as jurors, we would have held that the proof was not as strong as was required. In the case at bar, all we may inquire into is whether we can say, as matter of law, that the proof adduced was insufficient. The jury has found that the essentials to a verdict have been sufficiently established. We can interfere only if we may say that no reasonable mind could so find. It is not a question of what we think of the evidence. The narrow question before us is whether a jury could, in reason, find that the matters we have referred to as being necessary elements in the

9. APPEAL AND ERROR: review.

proof have been established.   We have already said that, as a guide to appellate review, fact cases are of little help. In the last analysis, the question here is whether, as matter of law, the evidence in this very case is insufficient to sustain a recovery.   Of course, we shall not attempt to set out the evidence.   Much less than doing that will suffice to make clear why here was a jury case.   As against the motion to direct a verdict for the defendants, the plaintiff is entitled to have taken as true the evidence adduced by her, and to have the benefit of the strongest inferences reasonably deducible from this evidence.   Measuring the case by these standards, we find that the following matters are either shown without dispute, or that the jury could find their existence:

10. TRIAL: directed verdict: strongest inferences reasonably deducible from most favorable evidence.

The plaintiff was a mere child when she married her husband, a man then but 20 years old.   Unfortunate things occurred prior to the marriage; but the jury could find that, despite all these, the couple lived together affectionately for a time, and that, for a time, the husband never intimated a doubt as to the paternity of the child that was born to them after the couple did marry.   It is either established without dispute, or the jury could find, that either or possibly both defendants advised this young husband of rumors impugning the chastity of his wife; that, while at first he branded these rumors as being a lie, after repetitions of them he withdrew himself from his wife, and when his child was born, he denied plaintiff the consideration due her under the circumstances; and that he failed to display any natural affection for the child.   The jury could find the son was quite under the control of his father, and refused to make any arrangements as to his own family until he had

11. HUSBAND AND WIFE: alienation of affections: circumstantial evidence: nature of proof.

seen his father; could find that, when the parents of the plaintiff suggested it might be better for the young couple to be established in a home of their own, and when the father of the plaintiff offered to furnish half the money required to establish such a home, the father of the husband responded that it was no use, and would be a waste of money; that both father and mother then suggested that the thing to do was for them to pay the wife a sum of money as a consideration for releasing the husband; could find the mother added it was no use to urge the couple to live together, and that to do so would lead to suicide, and perhaps murder. It could find that, on the next day, and after having consulted a lawyer, the defendants once more declined to help establish an independent home, and said that, if the couple lived together, it would lead to murder or suicide, and that it was their desire that the couple should separate; it could find that, in answer to an inquiry whether the father did not desire the couple to live together, he responded that, while he had not yet told anyone, he would tell his then interrogator, the father of the plaintiff, that defendant did not so desire, at which point the mother added that it was no use to urge them to live together, and that to do so would lead to suicide, and perhaps murder. It could find the father stated before the son that the father desired to separate the son from plaintiff. It could find that, on the day following the birth of the child, defendant J. H. Stilwell told the mother of plaintiff he thought the marriage would not be a success, and prophesied that plaintiff and her husband would not live together.

The jury could believe that, about a week before the baby was born, the defendant Sarah Stilwell came to plaintiff and told her that, after the baby was born, Sarah would take it, and plaintiff could go out in the world and have a good time and get another man; and that she ex-

pressed a hope that the baby would never breathe. It is true the defendants testify they were welcoming the plaintiff in their home, and desired her to remain there; but the jury could find that this was inspired by consultation with a lawyer, and that the welcome was a pretended and spurious one. True, none of these, nor all together, can be said to be direct evidence that the defendants confederated together to estrange and separate this couple. But an alienation suit can be established by circumstantial evidence, by facts that do not make the whole case, aided by just inferences from those facts in combination with others. The case of *Rice v. Rice,* 104 Mich. 371, cited by appellant, very clearly indicates that the verdict may rest upon testimony short of direct; and this must, in reason, be so. It is not to be expected that, in many cases, those who conspire to alienate the affections of a son from his wife will proclaim on the housetops that that is their purpose. More or less concealment is natural. More or less evasion is to be expected, when confronted with suit.

It seems to us the jury could believe, on this evidence, that the defendants desired to alienate the affections of their son from the plaintiff, and to separate the couple, and that they used such means to further this purpose as the law deems to be malicious, improper, and unwarranted, and that the means used were calculated to and did effect the purpose entertained. In one word, we are of opinion we cannot interfere with the verdict on the ground that the proof the law demanded of the plaintiff has not been supplied, and hold that here was a fair case for a jury.

12. HUSBAND AND WIFE: alienation of affections: sufficiency of evidence.

In view of this conclusion, it is unnecessary for us to pass on a point raised by the appellee, to the effect that, where there are two or more defendants, and a joint motion is made by them to direct a verdict for insufficiency

of testimony, the motion should be overruled if there be sufficient testimony to take the case against either to a jury.

IV.   There is a complaint that the instructions given are erroneous, and that all of them together disclose that the cause was tried on an erroneous theory.   An exami-

13. TRIAL: instructions: form, requisites, and sufficiency: correct but not explicit: waiver.

nation of the exceptions to the instructions discloses that the complaint is not that the charge as given is incorrect, but that it should have been more full than it is.   Assuming that this complaint is found in the brief points, the answer is that the remedy for an instruction that merely lacks in fullness is to offer instructions that supply what is lacking.   Instructions were offered, and there is a blanket complaint that it was

14. APPEAL AND ERROR: review: instructions: insufficient assignment.

error to refuse to give them.   If we can consider the refusal of the offered instructions, we would have the question whether the charge given did lack proper fullness, and whether the offered and refused instructions properly supplied what was lacking.   But we can review neither the instructions given or those refused, except in so far as the brief points present a complaint, point out why error was committed.   The only reference to instructions found in the brief points is found in Point 5, and is as follows:

"An instruction assuming there is evidence that parents conspired together and acted in concert with common, malicious design to alienate the affections of their son from his wife, where in fact there is no such evidence, is erroneous and prejudicial."

This narrows what we may review to whether there is an instruction having the vice of having assumed evidence on the lines suggested in Brief Point 5.   The instructions given fill eight pages of the abstract.   Nowhere is it point-

ed out where any instruction offends against the rule set out in the brief point. If there be such an instruction, it is certainly to be found at some specific point in the abstract. It is not our duty to examine the charge as a whole, to ascertain whether somewhere in it there is an instruction which offends the rule asserted in said brief point. See *Wheeler v. Schilder,* 183 Iowa 623.

It is proper to add that nowhere in the exceptions taken to instructions is there an objection that any instruction assumed anything. And in Instruction No. 9, the court charged that "malice cannot be inferred, but must be proven by a preponderance of the evidence, the same as any other fact." To be sure, appellants assert that Instruction 9 was inserted after defendant had filed his objection to instructions. There is no evidence in the record that this assertion is true. But no matter when inserted, it tends to show that the court submitted malicious design, instead of assuming that it existed.

V. In the errors relied on for reversal, it is asserted the court erred in overruling the motion of the defendants to set aside and vacate the verdict and to grant a new trial, and in overruling the separate motion of the defendant J. H. Stilwell to set aside and vacate the verdict as to him, and to grant him a new trial. We will assume this is a sufficient assignment, if the motions for new trial contain but a single ground. The fact is that the joint motion has 26 grounds, and takes up 10 printed pages of the abstract. It is the twenty-third ground that deals with newly discovered evidence. In the twenty-fifth ground is found the independent motion of J. H. Stilwell. It merely adopts the joint motion *in toto* and by reference. The assignment, then, is good only if all of the 26 grounds of the motion are well made. It suffices to say that this is not so. It can, how-

15. NEW TRIAL: grounds: newly discovered evidence: misconduct of jury.

ever, be gathered from one of the brief points that refusing to grant a new trial on account of newly discovered evidence is asserted as a ground for reversal. The brief point concedes that it was largely discretionary whether or not a new trial should have been granted, but asserts, in effect, that there was newly discovered evidence which is not cumulative, and is such as will be likely to lead to a different result on a new trial. So far as the argument *in extenso* is concerned, the only reference to the motion for new trial is this:

"The defendants' motion to vacate and set aside a verdict and grant them a new trial fully appears in abstract from page 44 to 54. Appellants are content to rest in the belief that this court will refer to said motion, as it sets forth specifically the views of the appellants as to some matters involved in this appeal, and it is needless to repeat them here."

It is doubtful whether it is our duty to give consideration to the claim that a new trial should have been granted. But we have considered it, and find that there was no abuse of discretion in refusing to grant a new trial because of newly discovered evidence. The foundation for the application is found, first, in an affidavit of Lucile Philips and Ora Stilwell, to the effect that, during the noon adjournment on the second day of the trial, affiant saw plaintiff just behind the juror Jones; that he, the juror, and plaintiff were passing out of the court room; that plaintiff engaged Jones in very earnest conversation, in a low tone of voice with her hands to her mouth, and in so low a tone that affiants could not hear what was said to Jones; that Jones responded in so low a tone that affiants could not hear what he said; that he smiled and nodded to plaintiff in the affirmative; and that neither the juror nor plaintiff seemed to notice either of the affiants at the time. The husband of plaintiff made affidavit to

like effect. There is no showing that the defendants were not advised of this before the trial closed, and no showing that the matter was called to the attention of the court before the motion for new trial was filed. If the matter became known to the defendants before the trial closed, it is manifest it was their duty to make objection then, to ask an inquiry into what was said and done between plaintiff and the juror, and to make application to have the panel dismissed and a new trial then ordered. It was no abuse of discretion to refuse a new trial on these affidavits.

Further, there is an affidavit on part of J. H. Stilwell asserting newly discovered evidence to be obtained from one Irene Tysseling. The substance of the testimony is that the witness will testify that, just before her marriage, plaintiff told Irene she hated the man whom she later married, the son of defendants, and that, after the marriage, plaintiff wrote Irene two letters, in neither of which she mentioned her marriage or her husband. It may gravely be doubted whether this proposed testimony is so persuasive and relevant as that it was an abuse of discretion to refuse a new trial for the purpose of allowing it to be adduced. As to diligence, the affiant says:

16. NEW TRIAL: grounds: newly discovered evidence: insufficient showing: lack of diligence.

"That prior to the trial I made all the investigation that I could in an effort to find testimony to present at said trial, and then I did not learn of the matters and things hereinafter set forth until the close of said trial."

The statement of this conclusion is not such showing of diligence as makes it an abuse of discretion to have overruled the application for new trial.

We find no prejudicial error, and the judgment must, therefore, be—*Affirmed.*

LADD, C. J., EVANS and PRESTON, JJ., concur.