THOMAS IRON CO. *v.* JACKSON IRON CO.

1. Sale—Breach of Contract—Excuse.
　Where defendant sold iron ore by a contract stipulating that it should not be liable in damages if delivery should be prevented or obstructed by combinations, strikes, "hindrances," turnouts, or accidents, it was not excused by mere difficulty in procuring labor, if it could have been obtained by a reasonable effort at prices not prohibitive.

2. SAME—MEASURE OF DAMAGES—INSTRUCTIONS.

In an action for the breach of a contract for the sale and delivery of iron ore, it was not error to instruct the jury that, if the ore was not obtainable on the market, plaintiff might recover the increased expense to it by reason of being compelled to use, as a substitute, ore of another grade; the contract disclosing that the ore was sold for use in plaintiff's furnaces.

3. SAME—CONSTRUCTION OF TESTIMONY.

In an action for damages for the nondelivery of iron ore sold, the court instructed the jury that, if such ore was not obtainable on the market at the time specified for delivery, then the measure of damages was the actual loss sustained by the failure to deliver, and that the case, in that respect, rested on the proof adduced by plaintiff, as defendant's testimony did not tend to show that any of this ore was on the market. *Held*, not error; the only testimony for defendant being that of a single witness, from memory, that such ore commenced to advance about July or August, and in September "would at least command the difference in freight, possibly about $3 per ton," but not showing that he had any knowledge of the value at the place in question, nor fixing the time as of the time the contract was broken.

Error to Marquette; Stone, J. Submitted November 14, 1901. (Docket No. 115.) Decided June 24, 1902.

*Assumpsit* by the Thomas Iron Company against the Jackson Iron Company for the breach of a contract to sell and deliver iron ore. From a judgment for plaintiff, defendant brings error. Affirmed.

*Clark & Pearl*, for appellant.

*George Hayden* (*William Fackenthall*, of counsel), for appellee.

MONTGOMERY, J. Plaintiff instituted this action to recover damages for the breach of a contract to sell and deliver at the docks of the Lehigh Valley Railroad at Buffalo 20,000 gross tons of iron ore, of a grade designated as "Jackson Pit No. 7," and to average 53.20 per cent. of

metallic iron in its natural condition. Among other conditions of the contract were the following:

"It is expressly agreed that said first party shall not be held liable for damages resulting from failure to deliver all of said ore hereunder, if prevented or obstructed ·by combinations, strikes, hindrances, turnouts, accidents, or delays at the mines, on the railroads or docks, or in transit, or by disaster of navigation, or other causes beyond its control, or by failure of said mines to produce sufficient ore to fulfill this and all other sales contracts: *Provided,* that all its sales contracts for such ore shall not at any time exceed in the aggregate the quantity which its officers estimate can reasonably be expected to be produced and delivered thereunder: *Provided,* when any such shortage is ascertained, first party shall so apportion further deliveries on this and all other sales contracts then unfilled so that all purchasers shall receive as nearly as may be their *pro rata* share of the aggregate shipments of said ore of the season 1899. Any undelivered balances resulting from such shortage shall be canceled."

On the trial it appeared that the defendant had delivered but a part of the ore contracted; that there was a shortage of something more than 8,893 tons. The plaintiff offered testimony tending to show that it was impossible to obtain ore of the grade in question at any price, and that it was only possible to keep its works in operation by supplying itself with other ore, which was used as a substitute, at an increased cost in reducing it to iron. Plaintiff recovered damages in the sum of $21,891.40, which sum included an overpayment on the ore shipped of about $1,200, and about $1,100 rebate on account of the ore actually received not coming up to the standard agreed upon. The defendant brings error.

On the trial the defendant sought to excuse the failure to deliver the ore contracted by showing that it was hindered by the scarcity of labor. The circuit judge held that the testimony offered by defendant was not sufficient to excuse its default. Defendant contends that the circuit judge erred in thus holding, and this presents the first question in the case. The defendant, by the terms of its

contract, was to be relieved from performance "if prevented or obstructed by combinations, strikes, hindrances, turnouts, accidents, or delays at the mines, on the railroads or docks, or in transit, or by disaster of navigation, or other causes beyond its control." It appears to be the theory of defendant that difficulty in securing labor is to be considered as a hindrance, within the meaning of this clause. The circuit judge, on the other hand, was of the opinion that a mere showing of inconvenience or difficulty in securing men at going wages was not sufficient, and that the defendant's evidence did not show that it had taken the means which a prudent man should have taken to obtain the necessary labor at an increased price. The defendant insists that this question should have been submitted to the jury.

The term "hindrance," as used in this clause, is to be construed in connection with the other terms with which it is connected. Defendant was to be excused only if "prevented or obstructed." These words, "prevented or obstructed," imply some obstacle which it is not within the power of defendant to overcome by reasonable effort on its own part. The conditions with which this word "hindrance" is connected—"combinations, strikes, turnouts," etc.—import the same thing. When this contract was made, the parties expected increased activity in the ore industry, and must have anticipated increasing difficulty in securing labor, and must have expected that increased wages would be paid, if necessary to secure the performance of the contract. To set out the testimony at length would extend this opinion beyond reasonable limits. A careful examination of the evidence, however, convinces us that defendant failed to show impossibility of securing labor to load this ore. That, if an increase of price had been offered and maintained, the labor could have been secured, and this at prices that were not prohibitive, is fairly inferable from the testimony of defendant's witnesses.

The circuit judge instructed the jury that the general

rule of damages, where there is a market or a market price, is the difference between the market price and the agreed price; but that, if there was no market for this ore,—that is, if the ore was out of the market, and unobtainable,—the plaintiff would have a right to recover the increased expense to it by reason of being compelled to use, as a substitute, ore of another grade. This was based upon the fact that the contract showed that the business of the plaintiff was understood by the defendant at the time the contract was made, and that the ore was sold for use in plaintiff's furnaces. The rule thus laid down is supported by the holding of this court in *Den Bleyker* v. *Gaston*, 97 Mich. 354 (56 N. W. 763). See, also, *McHose* v. *Fulmer*, 73 Pa. St. 365, and *Hinde* v. *Liddell*, L. R. 10 Q. B. 265.

The circuit judge, after instructing the jury that the general rule was that the difference between the market price and the price at which the ore was contracted should be the measure of damages, added: "If you shall say that there was no market for such ore; that the ore was out of the market, so to speak; that there was no such ore in the market to be obtained at the time of the breach of this contract, in the fall of 1899,—then the plaintiff could not and should not be held to this rule;" and, in effect, instructed the jury that in such case the measure of damages is the actual loss sustained by reason of the nondelivery. The circuit judge further instructed the jury that the case, in this respect, must rest upon the proof as adduced by the plaintiff, for the reason that the testimony on the part of the defendant did not tend to show that any of this ore was on the market in the fall of 1899. Complaint is made of this holding, but we think it entirely justified. The only testimony on the part of the defendant which might tend to show that ore of this quality was obtainable was the testimony of Capt. Mitchell, who was asked, "What was the ore in question worth in Cleveland, or on these Lehigh docks mentioned in the contract, in the year 1899,—this pit No. 7 ore?" and answered:

"There was an advance in the fall over the spring prices, of course. It commenced to advance about July or August. I should say—from my memory I would say—that pit No. 7 ore, in the month of September, would at least command the difference in freight; possibly about $3 per ton." This testimony does not show that the witness had any knowledge of the value of ore in such place. Nor does it fix the time as the time at which the breach occurred. We think there was no error on the part of the circuit judge in instructing the jury that the testimony of the plaintiff's witnesses was the only testimony bearing upon this question.

We find no error in the record, and the judgment will be affirmed, with costs.

HOOKER, C. J., MOORE and GRANT, JJ., concurred. LONG, J., did not sit.