SAPULPA REFINING COMPANY, Appellant, v. CEDAR RAPIDS OIL
COMPANY, Appellee.

**TRIAL:** When Jury Question Arises. If reasonable minds may differ
1   on the evidence relative to the issue whether a contract has been
so modified, abrogated, or substituted for as to no longer be in
existence, or whether all matters growing out of it have been
settled, then, of necessity, a jury question is presented.

**EVIDENCE:** Intent, Purpose, and Understanding of Party. Unambigu-
2   ous written correspondence may not be supplemented by the oral
testimony of a party thereto, as to what he *intended, purposed, or
understood,* in preparing his part thereof, when such intent, purpose, and understanding presented the identical issue before the
jury.

**SALES: Damages for Nondelivery—Substitute Goods.** The measure of damages for the nondelivery of goods as per contract, in those cases where the goods cannot be purchased at the time and place of delivery, is the difference between the contract price and the market price at the nearest available market, plus the added increased expense necessarily incurred in being compelled to use a substitute.

*Appeal from Linn District Court.*—F. O. ELLISON, Judge.

OCTOBER 4, 1920.

REHEARING DENIED JANUARY 20, 1921.

CONFESSING the amount claimed by plaintiff, appellant, the defendant counterclaimed, setting up damages for breach of contract. On this counterclaim, the court directed a verdict for the claimant in $20,607.14. Plaintiff appeals.—*Reversed.*

*Trewin, Simmons & Trewin, C. E. Richmann,* and *Grimm, Wheeler, Elliott & Jay,* for appellant.

*Deacon, Good, Sargent & Spangler,* for appellee.

SALINGER, J.—I. To avoid the counterclaim, defendant urged that it owed nothing for breach of a contract confessedly entered into, because (a) that contract had been so modified or abrogated or substituted for as that it was not in existence to be breached; and (b) if that be not so, all claims for damages had been settled, and nothing was due, because there had been accord and satisfaction. If it can rightly be held that, as matter of law, both avoidances are not well made, the action appealed from is right. If reasonable minds may differ on whether either avoidance is established, it was error to direct verdict for defendant.

1. TRIAL: when jury question arises.

Both parties were permitted to adduce testimony to the effect that the witnesses, say, in writing a letter or in sending a check to balance, construed what was done, to mean or be a particular thing. The following interrogatories are illustrative. 'Richardson, for plaintiff, was interrogated as follows:

2. EVIDENCE: intent, purpose, and understanding of party.

"Q. Why were none of the subsequent invoices based on Order No. 156? A. Because we did not consider Order No. 156 in effect. Q. Why did not plaintiff consider that order in effect? A. Because defendant had at different times ordered other goods not covered by Order 156."

On the other hand, Collins, for defendant, against objection, was interrogated as follows:

"Q. I call your attention to the letter dated August 12th, in which reference is made to the check to balance account, and will ask you whether, at the time this letter was written and sent, you considered the contract for 57-58 gasoline, based on Order 156, was still in effect. A. I did consider it still in effect."

Substantially the same examination was permitted as to the letter written by defendant of date June 5, 1912. And again:

"Q. At that time this letter was mailed by you, with a check enclosed, did you or did you not have any intention, in sending that check, to waive any rights or claims under that contract for 57-58 gasoline, based upon Order 156? A. I had no intention of waiving any rights under the contract."

Collins testified that, when he wrote, "if everybody is paying market price, we will be glad to do the same," he had in mind that refineries were making different prices to different jobbers, and wrote thus because he did not want to pay a fictitious market price on this order; and, while willing to pay the ordinary price on this order, he did not want to be held up on account of goods they had bought on the contract at a low price.

As to some things, direct testimony is admissible, even though, in a sense, such states a conclusion as to an ultimate question. We said, in *Pooley v. Dutton,* 165 Iowa 745:

"Stated generally, the rule is that, whenever it becomes material, in determining rights involved in litigation, to show the motive, intent, or other mental operation of any person, or to ascertain the reasons or influences which have induced certain action or conduct on his part, such person may testify directly thereto, even though such testimony may partake in some degree of the nature of a conclusion  *  *  *  It is true the intent or motive or the reasons influencing a person to any given act may be, and often are, shown by the circumstances attend-

ing and characterizing the act itself; but, if the fact be material upon the issues joined, it may also be established by the direct testimony of such person. He alone knows the truth with respect to such matter, and to refuse his testimony is to reject the only direct proof available, and decide the fact solely as a matter of inference from extraneous circumstances.''

In *City Nat. Bank v. Jordan,* 139 Iowa 499, we stated it thus:

''Whenever motive or intent or the reasons operating to induce a given action by a party are material considerations in determining rights involved in any litigation, it is competent for such party to testify thereto; and the fact that such testimony may partake of the nature of an opinion or a conclusion, or may relate to some ultimate fact or facts upon which the jury must pass in reaching their verdict, works no exception to the rule. And they are entitled to have their sworn statement in that respect go to the jury for whatever it might be deemed worth, when considered with all other facts and circumstances bearing upon that question.''

In the *Pooley* case, the rule is applied to the extent of permitting a wife, in a suit against her parents for alienating her affections, to testify that certain acts of the husband had a stated effect upon her affection for him. In the *Jordan* case, the rule works permission to give direct testimony that certain representations were relied on, and induced the party to whom they were made to act as he did. And we have decisions in this jurisdiction that, where the charge is an assault with specific intent, or that some other act involving such intent was committed, the defendant may testify to what intent he had. We have so held in cases where false and fraudulent representations, or other fraud, were the basis of the action. But if the rule has no limitations or exceptions, then, indeed, to use the words of *Fowler v. Delaplain,* 79 Ohio 279 (87 N. E. 260), ''juries might be dispensed with altogether.'' No application of the rule to which we have adverted would seem to justify permitting the writer of a letter stating that a ˙check to balance accounts is inclosed, to testify that no settlement or waiver of damages was intended, and that the check was not intended to balance accounts; or to say that acts working an abandonment of or sub-

stitution for a contract were done with intention and belief that the contract was still, and would remain, in effect. Nor is there anything in *Bamberger v. Burrows*, 145 Iowa 441, which makes the construction of writings a jury question. For support of all this, we need not limit ourselves to original reasoning. It was said, in *Lamar County v. Clements*, 49 Tex. 347:

"But where the dedication is clearly manifested by unequivocal acts or declarations, upon which the public, or those interested in such dedications, have acted, the fact that the owner may have entertained a different intention from that manifested by his acts or declarations, is of no consequence."

In *City of Columbus v. Dahn*, 36 Ind. 330, that:

"We think that the question whether a person intends to make a dedication of ground to the public for a street or other purpose must be determined from his acts and statements explanatory thereof, in connection with all the circumstances that surround and throw light upon the subject, and not from what he may subsequently testify as to his real intent in relation to the matter."

And in *City of Indianapolis v. Kingsbury*, 101 Ind. 200, at 213, the court agreed that an essential element of dedication is the intent of the owner to devote his land to a public purpose, but it declared that, while this is so:

"The intention to which courts give heed is not an intention hidden in the mind of the landowner, but an intention manifested by his acts. It is the intention which finds expression in conduct, and not that which is secreted in the heart of the owner, that the law regards."

In *Fox v. Hartford & W. H. R. Co.*, 70 Conn. 1 (38 Atl. 871, at 873), a witness was asked: "Was it your intention to convey the coupons?"

The court held that this question really called for evidence of the actual, secret intention of the witness, which, under the circumstances, was of no legal significance; that the real question was as to his manifested intention, and this could be ascertained only from the contract, read in the light of the circumstances under which it was made; and that, therefore, this evidence was properly excluded. And where a letter of defendant's is relied on by plaintiff, and is being sought to be enforced by him

as a promise to pay a debt owing from defendant to plaintiff, owing to plaintiff by a third person, the evidence of the writer as to what he meant or intended in writing is inadmissible; and while, in such a case, ambiguity may be explained by surrounding facts, it may not be done by undisclosed intention. *Slater, Myers & Co. v. Demorest S. & H. Co.,* 94 Ga. 687 (21 S. E. 715). In *Mead v. Hogue,* 49 Iowa 703, we ruled that a witness present when an exchange was made between the parties might not say:

"I understood it as an exchange of notes; that he took the Perry note on his own responsibility."

And in *Kelso v. Fitzgerald,* 67 Iowa 266, we held that a witness might not give what was her "understanding" of an agreement by her.

We shall eliminate the direct testimony as to intention, given on both sides. We decline to treat its being adduced as a concession that there was a case for a jury. We shall consider competent testimony only. See *Campbell v. Park,* 128 Iowa 181.

II. Order No. 156 was mailed to plaintiff on January 8, 1912. It called for 20 tanks of "68" gasoline at 8 cents the gallon, 40 tanks of "57" at 4.17 cents the gallon, and 30 tanks "58" at 4½ cents the gallon. On January 15, 1912, the defendant, by letter, so modified Order No. 156 as to change it into one for 40 tanks of "57" gasoline at 4.92 cents the gallon, and 30 tanks of "58" gasoline at 5¼ cents per gallon. The contract which is the basis of the counterclaim is Order No. 156, so modified.

The controlling and undisputed testimony is that shipments under the contract began on April 4, 1912, continued throughout the month, and stopped. But on June 3, 1912, defendant ordered by telegram. Plaintiff accepted this order by letter of date June 3d, but at market price. On the 5th of June, Collins replied to this letter by saying the same had been received and that, "if everybody is paying market price, we will be glad to do the same; only we want some goods shipped." On September 20, 1912, defendant telegraphed the plaintiff to ship no more goods at market; and no further goods were either ordered or shipped. Throughout all this time, when it was perfectly clear that the shipments covered by the contract were not being

made, the defendant at no time asserted that it had a contract, or insisted upon performance of a contract, or as much as intimated that it would demand damages if the contract were not performed. On the contrary, it accepted shipments, fully understanding that the same must be paid for, not at contract, but at market price. What is the effect of these facts?

On appeal because a verdict was directed, "we do not inquire whether the losing party is entitled to a directed verdict, but determine only whether appellant had, at the least, a question for a jury." *Ney v. Eastern Iowa Tel. Co.*, 185 Iowa 610; *Carlsten-Williams Co. v. Marshall Oil Co.*, 187 Iowa 80; *Winnike v. Heyman*, 185 Iowa 114. If what is said in argument can be read to go beyond that, that is argument, and not decision. With this appellate review rule applied, what is the effect of the facts we have set forth, and of other facts to be set forth?

We think a jury could deduce from and conclude upon them that, because of unprecedented market conditions that developed after the contract was made, the plaintiff was more than unwilling to carry out its contract, and that the defendant concluded that half a loaf was better than no bread, and that it would be best to obtain oil, and keep in business, even if a rate higher than the contract rate must be paid. After the contract was entered into, the oil market became abnormal, in short production and in great shortage. Defendant, with its 150 oil stations, became quite frantic, in an effort to keep on doing business. In sending a remittance, on July 17, 1912, Collins, acting for defendant, wrote plaintiff he feared he would get drunk if oil be not shipped. The letter more than intimated to plaintiff that failure to supply defendant may have been due to slow payment by defendant. Plaintiff answered that failure to remit had nothing to do with failure to ship, and that failure was due to the fact that plaintiff "has simply been swamped, and that every jobber with whom it is doing business thinks it is giving the other fellow the goods and letting him wait." In August, $5,000 was remitted, to "balance accounts." This was coupled with a request for oil, because "we are badly in need of the same." A jury could conclude that defendant proceeded on the theory that conditions might press plaintiff into claiming it was impossible for it to perform, or to perform at contract price,

and that obtaining oil at prices higher than the contract rate would be more advantageous than to stop the business of 150 stations and seek compensation in damages, which could not be greater than the difference between the contract and the market price.

We are not overlooking the claim of defendant that, as a matter of fact, the plaintiff could have complied with the contract. What we are holding is that an attempt to establish that contention would but base a suit for damages, and that a jury might say defendant consented to an abandonment of the contract, on the consideration that it thought that what it would obtain by doing so was of more value than the possibilities of a damage suit. We have no occasion to pass on whether this was a sufficient consideration to sustain the claimed modification. No such issue is in the case. No want of or insufficiency of consideration is pleaded, and we have no point on that in the appeal record. What we say as to consideration is but a statement of what a jury might conclude moved the defendant to consent to modification.

### 2-a

The avoidance by defendant is that all consents to paying at market price had no reference to oil specified in the contract, and dealt only with purchases independent of the contract. But it is a conceded fact that the contract always covered oil at contract price, and also specified additional shipment weekly at market price. The letter to defendant of April 17th reminded defendant of that fact. On April 19th, defendant conceded the fact, and stated that it "did not expect to have the order entered at anything but market prices" as to the "third tank." On June 5th, on demand for market price, defendant, without mention of contract, writes:

"If everybody is paying market, we will be glad to do the same; only we want some gasoline shipped."

In August comes an urgent order, without mention of contract or contract price. Finally, there is a letter of date September 18, 1912, which the jury could find makes it fairly clear that market price had been substituted for contract price, be-

cause the letter directs that no more goods are to be shipped at market, unless shipment be first made on orders placed "last spring." The letter is:

"Unless you care to ship on those orders which were with you last spring, do not ship us any more goods at market."

The physical facts will sustain a verdict finding that the contract was so changed as that there is no breach of contract.

### 3-a

There is testimony of Collins as to a talk with Richardson, had on June 11th. For this testimony it is claimed that Richardson then admitted that plaintiff had fallen down on the contract, and said that, when he got home, he would get the plant to running smoothly, and would then ship back orders on the contract. The ultimate argument is, this establishes, as matter of law, that the contract was not abrogated by the correspondence had on June 3d and on June 5th; establishes as matter of law that said correspondence was limited to goods additional to those included in the contract. Now, of course, a confession that the original contract had not been complied with is no evidence that it was never abandoned or substituted for. There is no inherent impossibility involved in making a new contract, even though the old has not been complied with. But the alleged promise, coupled with the .alleged confession of noncompliance, is some evidence that the June correspondence and agreement to ship and receive at market price did not apply to goods specified in the contract. This single piece of testimony, given by an interested party, and purporting to give in April, 1917, the recollection of a statement by word of mouth, made in June, 1912, does not establish, as matter of law, that the original contract remained in effect. We are of opinion that it was for the jury whether the original contract had, in effect, been abandoned.

III. It has been seen that a jury could find that the parties so acted as to indicate that defendant had no rights based on nonperformance of contract; acted as if there were no contract. In addition to these, there is evidence that, at a time when, on the theory of defendant, plaintiff owed it much more than that

for breach of contract, defendant sent plaintiff a check for some $5,000, "to balance accounts." This all is the evidence in support of plaintiff's claim of accord and satisfaction. Whether defendant has enough to send this issue to the jury is a much closer question than arises as to whether abrogation was a jury question. On whether settlement or accord and satisfaction should have been submitted to the jury, we might not all be agreed. Therefore, following well-settled rules of appellate review when there must be a reversal in any event, we express no opinion on this point at this time.

IV. If the correct measure was adopted, the amount of damages was not for the jury, because the amount is a mere matter of computation, and the amount to be delivered under the contract is shown without conflict. See *Seefeld v. Thacker*, 93 Wis. 518 (67 N. W. 1142). Whether the right measure was adopted is the remaining question.

3. Sales: damages for nondelivery: substitute goods.

The verdict was directed on the theory that the damages due should equal the difference between the contract price and what the defendant had to pay at the nearest available market where it could obtain the goods. The theory advanced by appellant is this: The defendant offered Exhibit Q. It was objected to "because the goods purchased by the defendant, or the amount paid therefor, are wholly immaterial, irrelevant, and incompetent, and have no bearing on the issues in this case. True measure is the difference between the contract price and the fair market price of the goods contracted for as they were to have been delivered under the contract at the time they were so to be delivered, the said market price to be found at the place where they were to be delivered, and if that had no market, then at the nearest place where there was a market place at that time for said goods."

Did the court adopt the wrong theory?

Order No. 156 stipulates that the gasoline is to be delivered F. O. B. Sapulpa, Oklahoma. The refinery owned by plaintiff was the only one at Sapulpa. Defendant endeavored to procure prices and quotations from refineries in the mid-continental field, which embraces Oklahoma. The best price obtainable on this inquiry was 7¼ cents a gallon. Defendant was unable to pro-

cure any quotations on 57-58 gasoline, and thereupon bought 60-61, which was the nearest to 57-58 gasoline that could be got, at the lowest price obtainable, and the 60-61 was used as a substitute. Some gasoline was bought from the Texas Oil Company, which had a refinery at Lockwood, Illinois. The company shipped to this point in Illinois its distillation made in Oklahoma, for final distilling purposes. Some goods were bought from a refinery at Okmulgee, Oklahoma, which is about 32 miles from Sapulpa, and in the mid-continental field. The only advantage between the refineries in the same field from which plaintiff did not buy and the ones it did buy from is that the ones not bought from had a little advantage in freight rates, and the seller equalized that rate for the defendant.

If there is a market or market price, the measure is the difference between the price and the agreed price. If there is no market price, or the commodity is out of the market and unobtainable, then there is the right to add the increased expense incurred by being compelled to use a substitute of a different grade. *Thomas Iron Co. v. Jackson Iron Co.*, 131 Mich. 130 (91 N. W. 137) ; *Hardwood Lbr. Co. v. Adam & Steinbrugge,* 134 Ga. 821 (68 S. E. 725) ; and 3 Sutherland on Damages (3d Ed.) 1886 is to like effect.

Since the only refinery located at the point of stipulated delivery could not supply what was to be delivered under the contract, the rule contended for by plaintiff cannot govern, and the one adopted by the court was the correct rule. See *International Harv. Co. v. Chicago, M. & St. P. R. Co.*, 186 Iowa 86; *Grand Tower Co. v. Phillips,* 90 U. S. 471; *Gaunt v. Ralston Purina Co.,* 198 Fed. 60, 63; *Iowa Brick Mfg. Co. v. Herrick,* 126 Iowa 721; and *Tuttle-Chapman Co. v. Coaldale Fuel Co.,* 136 Iowa 382, at 387.

V. There are a number of objections to the admission and exclusion of testimony. Some of these we have disposed of by refusing to consider what was admitted over the objection of the appellant, which makes the reception of such testimony error without prejudice. Other testimony received which we have not heretofore disposed of in terms, has also been eliminated by the final conclusion reached without reference to it. Some objections to testimony received have to do with the true measure of

damages, and, if eliminated, would still leave our views on that measure unchanged. And it is to be said that some of the testimony bearing on measure of damages and objected to was rightly received. As to testimony excluded on the ground, among others, that it was not cross-examination, we have to say that it would not have changed our final conclusion if this testimony had been received, and that, in the main, the objections made on that score were well taken.

For the reason stated in Division II, the judgment below must be, and is,—*Reversed.*

WEAVER, C. J., EVANS and PRESTON, JJ., concur.