IDA E. HEISLER v. CONRAD HEISLER and NETTIE HEISLER, Appellants.

**Husband and wife:** ALIENATION OF AFFECTION: ACT OF PARENTS. Parents may rightfully advise their married children concerning their domestic affairs though it may lead to a separation, without becoming liable for alienation of affection, if the advice is given honestly and with a view to the welfare of both parties.

**Same:** BURDEN OF PROOF. The burden of proof is upon the one suing for alienation of the other's affections by his or her parents, not only to show actual alienation but that the interference was intentional and malicious.

**Same:** JOINT AND SEVERAL LIABILITY: EVIDENCE. Where the action is against both parents for intentional alienation of affection there must have been cooperation on their part to accomplish the design to justify a verdict against both; but if a cause of action is made

out against only one a verdict and judgment should be entered accordingly.

**Same:** EVIDENCE. In this action the parents were sued jointly for the alienation of the husband's affections, but the evidence fails to disclose any liability on the. part of the father, although sufficient to support a verdict against the mother.

**Same:** INSTRUCTIONS: ASSUMPTION OF FACTS NOT IN EVIDENCE. An instruction assuming that there was evidence that the parents acted with a common design in alienating the affections of their son for his wife, as given in this case, where there was in fact no such evidence, was erroneous and prejudicial.

*Appeal from Butler District Court.*—HON. C. H. KELLEY, Judge.

SATURDAY, JUNE 10, 1911.

THE defendants are parents of plaintiff's former husband, and in this action judgment for damages alleged to have been caused by the alienation of his affections was entered against them. They appeal. *Reversed.*

*Dawley & Wheeler, Williamson & Willoughby,* and *W. T. Evans,* for appellants.

*Edwards & Gregory* and *Courtright & Arbuckle,* for appellee.

LADD, J.—In December, 1905, plaintiff married Willie Heisler. She left him October 2, 1907, and shortly afterwards the bonds of matrimony were severed by a decree of divorce. She claims that he once loved her, and his affections were alienated by the machinations of the defendants. They admit that the attachment existed, and assert that it had never ceased, and denied that they interfered in his affairs save as parents might. She supposed up to the final separation that his regard for her was unabated, and at

the trial he testified that he loved her still. His acts, however, in falsely accusing her of accepting attentions from and of undue familiarity with other men, utterly without cause, in striking her on several occasions, and in cruelly beating her on the day of their separation, put in issue whether his affections had in fact been alienated.

Appellants say that even if the jury might have found that his affections had been alienated, the finding that this had been caused by wrongdoing on their part is not sustained by the evidence. In passing on this question, it must be borne in mind that the defendants are the parents of Willie, and, owing to this relation, had the right to counsel him in all the matters relating to his welfare, provided that in so doing they acted in good faith. The reciprocal obligations and the affection of parent and child continue through life, after as well as before marriage, and caution must be exercised lest the assertion of a supposed right of action be made to rest upon a proper parental regard for the welfare and happiness of the child. There is a broad distinction between a case of this kind against the parent and one against a stranger. Parents are under obligations by the laws of nature to protect their children from injury and relieve them when in distress. Their natural affections prompt them to interest themselves in the welfare of the child. Conduct of a stranger which justly would be characterized as that of a malicious intermeddler might express but the natural impulse of parents. The law recognizes the right of father or mother to advise their son concerning his domestic affairs, even though this lead to separation or that separation be effected, without incurring liability for alienation, if the advice be given honestly with a view to the welfare of both parties. *Beisel v. Gerlach,* 221 Pa. 232 (60 Atl. 721, 18 L. R. A. (N. S.) 516); *Leavell v. Leavell,* 122 Mo. App. 654 (99 S. W. 460); *Tucker v. Tucker,* 74 Miss. 93 (19 South. 955, 32

*Margin note:* I. HUSBAND AND WIFE: alienation of affection: rights of parents.

L. R. A. 623); *Tasker v. Stanley,* 153 Mass. 148 (26 N. E. 417, 10 L. R. A. 468); *Oakman v. Belden,* 94 Me. 280 (47 Atl. 553, 80 Am. St. Rep. 396); *Barton v. Barton,* 119 Mo. App. 507 (94 S. W. 574); *Hutcheson v. Peck,* 5 Johns. (N. Y.) 196.

The motives of the parent are presumed to have been good until the contrary is made to appear, and the burden of proof is on the complainant to show, not only actual

2. SAME: burden of proof.

alienation of the affections, and that this was caused by the interference of the parents, but in so doing that they acted intentionally and maliciously. *Reed v. Reed,* 6 Ind. App. 317 (33 N. E. 638, 51 Am. St. Rep. 310); *Multer v. Knibbs,* 193 Mass. 556 (79 N. E. 762, 9 L. R. A. (N. S.) 322); *Leavell v. Leavell, supra.*

II. The action is for an intentional, not merely a negligible, tort, and, in order to justify a verdict against both defendants, there must have been cooperation between

3. SAME: joint and several liability: evidence.

them with the design to alienate Willie's affection. Where the concurrent negligence of two or more persons contribute to the harm, the tort feasors may be jointly sued, but, where the torts are intentional and independent of each other, though their combined influence may result in injury, it seems that the liability is not joint. *Barton v. Barton, supra.* Even though both were sued, if a cause of action was made out against one only, the jury might have so found, and judgment have been entered accordingly. *Young v. Gormley,* 119 Iowa, 546. When the record is examined in the light of these principles, it will be found that no cause of action was made out against Conrad Heisler. Immediately after their marriage, Willie took plaintiff to the residence of defendants on their farm in Pleasant Valley. He was twenty-two years of age, and always had lived there. She was a year younger, had been reared in town, and for some time previous had been in charge of the local tele-

phone office.   This arrangement continued until June,
when the parents moved to Parkersburg, leaving Willie,
who had rented the farm, with plaintiff in undisputed pos-
session.   But, as was natural, the father and mother fre-
quently visited the old home, the former assisting Willie at
his work, and the latter helping about the house.   Neither
of them extended to the young wife the sympathy and en-
couragement which might well have been given.   On the
contrary, both were somewhat inclined to criticise, though
neither is shown ever to have advised or even to have sug-
gested a separation.   Nor does it appear from this record
that they cooperated  with any such design.   True, Conrad
Heisler was often present and remained silent when his
wife, according to plaintiff's story, gave vent to her sus-
picions concerning plaintiff.   But as what was said re-
quired no response from him, either by way of denial or
admission, an inference of acquiescence therein by him
is not to be drawn.   Unless the remarks were concerning
a matter and so directed as naturally to call for an expres-
sion from him, no account should be taken of his omis-
sion to speak.   See *Young v. Young,* 8 Wash. 81 (35 Pac.
592).   Possibly at the common law, Heisler might have
been chargeable with what his wife did or said in his
presence.   See *McElfresh v. Kirkendall,* 36 Iowa, 224,
and *Bethel v. Otis,* 92 Iowa, 502, where it was conceded
that the husband was responsible for the wrong of his wife
done in his presence.   But the matter is now controlled
by statute which declares that:   "For civil injuries com-
mitted by a married woman, damages may be recovered
from her alone, and her husband shall not be liable there-
for, except in cases where he would be jointly liable with
her if the marriage relation did not exist."   And the rule
stated above is applicable.

III.   Nor have we discovered evidence of anything
said or done by him which can fairly be held to have had
a tendency to alienate the affections of Willie from plain-

tiff. Of course, he thought the location of the washstand not so convenient as formerly, and did not like plaintiff's sauerkraut. He feared her many chickens might destroy the grain at the stacks, and doubted the wisdom of replacing the stock he had left on the farm with pedigreed animals. He told how he would do if back on the farm with the boys again, and indicated a preference for his methods over those of Willie. Surely none of these can be said to have been designed to harden Willie's heart. Nor do we think he should be condemned for expressing lack of wonder that eating plaintiff's sauerkraut caused a pain in Willie's stomach, or for saying, "Ahem, that beautiful music cabinet," when Willie asked plaintiff to get a piece of music therefrom, even though the mother-in-law had offended by uttering unfounded suspicions. For all that appears, the kraut may have been indigestible, and we have never heard that discussions of the quality of kraut necessarily have a bearing on the state of the affections. The remark concerning the cabinet was not necessarily an *innuendo,* and may as well be construed to have been sincere as otherwise. At one time he observed that he did not understand how plaintiff knew anything about stock. At another, when she declared, in response to an inquiry of her husband as to how she liked a fence just built, that it was a fine job, he remarked that they knew that before she had come out and told them, and at still another, when Willie told him to hand a cream check to plaintiff, he did so saying: "O, that wisehead, she better have it." .

The mention of these items of evidence is enough to indicate their lack of probative force as bearing on the main issue. On one occasion, when plaintiff was urging Willie to go with her to call on a sick neighbor, his father roughly remarked that "she had lots of time to waste in running around to find out how all the neighbors are getting along. He told Elt (the sick man) go to ———."

4. SAME: evidence.

Plaintiff's sister testified that in the afternoon, during a rainstorm, Willie said plaintiff should get the canvas from. the reaper and mend it. The witness suggested she ought . not to do so in the storm, and Willie insisted, when his father remarked that she might as well go and get it as that was all that she was good for; that she might as well do something; that she did not amount to any-thing anyway. Possibly this happened, though the plain-. tiff did not mention it. If it did, there is reason to think that it was said in ridicule of the son, who had proposed that his wife go out in the storm. But he may have underestimated plaintiff's worth without evil design. Indeed there is evidence in the record tending to show that he thought it would have been better if Willie had married a "big Dutch girl," who could have worked in the field and husked corn, but a suggestion of this kind called from Willie an enumeration of his wife's accomplishments and achievements, and the discussion ended. These are all of the alleged shortcomings of the father attempted to be proved in support of the petition, save his omission to interfere to protect plaintiff at her instance when Willie was beating her on the day of her, parting. However his conduct on this occasion may be characterized, it could not have influenced Willie in his affection for plaintiff, if any he then had, for the father. did not participate in any way save as an onlooker in this last scene of the drama. From the above recital, it is ap-parent that the sum of his offending was his failure to give due weight to the change of environment in plaintiff's life, and to consider the aspirations and efforts of his children in the spirit of tolerance and affection. But, con-ceding this, what he is shown to have done and said falls far short of any design, malicious or otherwise, of alienat-ing them one from the other.

But, as to the defendant, Nettie E. Heisler, the record is different. The evidence, if believed by the jury, was

sufficient to support a finding that she deliberately undermined Willie's affections for his wife. Probably fault-finding with plaintiff's cooking, with the arrangement of her furniture, with entertaining members of her family, with raising too many chickens, with her counsel to Willie, in the operation of the farm, and even with working him to death, and the like, would not be enough to justify such a finding, but when all these were supplemented by repeated insinuations and accusations against plaintiff's character for chastity, and these were shown to have influenced Willie against his wife, and were persisted in after she must have known their effect, a case was made for the jury. It should be added that the evidence concerning the different complaints of this defendant's conduct is in sharp conflict, and we have undertaken to do no more than indicate the tendency of that introduced in behalf of plaintiff.

IV.   Among other instructions, the court told the jury that:

Evidence has been introduced upon the trial as to things claimed to have been said and done by Conrad Heisler when Nettie Heisler was not present; also as to things claimed to have been said and done by Nettie Heisler when Conrad Heisler was not present; also to things claimed to have been said and done by one or the other of said defendants in the presence of the other, but claimed not to have been participated in by such other. This evidence should be considered by you only so far as the same may aid you, if at all, in determining the rights of the plaintiff as against the defendant, if either, who you find so said or did, unless you find, from the weight or preponderance of the evidence introduced upon the trial, that defendants were acting in concert and to accomplish a common object, to wit, to alienate from plaintiff her husband's affections. If defendants were so acting in concert and to accomplish such common object, then you may consider such evidence so far as the same may aid you, if at all, in determining the rights of the plaintiff as against both defendants, even though each did not partici-

5. SAME: instruction: assumption of facts not in evidence.

pate directly in all of the conversations and acts of the other. In determining the motive and intent of each defendant, you may consider everything said and done by such defendant upon any and all occasions as shown by the evidence.

The error in the instruction lies in the assumption that there was evidence from which the jury might have found that defendants acted together with the common design of alienating their son's affections from plaintiff. The record was without such evidence, but the jury in finding against both defendants must have concluded otherwise, and in returning a verdict against Nettie Heisler might have considered what her husband said in her absence or in her presence to which she had not assented either expressly or by implication. In permitting this the instruction was not only erroneous, but prejudicial, and for this reason the judgment against Nettie as well as that against Conrad Heisler must be, and is, *reversed*.