CELIA BOOM, Appellee, v. GEORGE BOOM, SR., et al., Appellants.

JUNE 26, 1928.

*W. T. Evans* and *M. H. Czizek,* for appellants.

*Frank McGreevy* and *Hurd, Lenehan, Smith & O'Connor* for appellee.

DE GRAFF, J.—The petition in this case in substance alleges

that, shortly after the marriage between the plaintiff, Celia Boom, and George Boom, Jr., the defendants (father, mother, and brother of plaintiff's husband) and each of them, acting in concert, and working to a common end, maliciously, unlawfully, and wrongfully sought to prejudice plaintiff's husband against her and to alienate his affections from her; that, by means of conversations with plaintiff's husband, and suggestions made by the defendants individually to the plaintiff in the presence of her and her husband, and suggestions made to the husband, and by interfering by advice and criticism and attempts to manage and control the household affairs of plaintiff and her husband, and to manage, control, and dictate the policy of the husband and the plaintiff with respect to work around the farm and in the field, —where the plaintiff's husband should go and not go, what he should do and not do,—and by insinuation and innuendo against the plaintiff, endeavoring to prevent plaintiff and her husband from living together in peace by themselves, and so preventing them, and by statements made to him of a false, defamatory, and slanderous nature concerning her character and reputation, sought to poison his mind against her; that such statements and acts were for the purpose of inducing the husband to leave the wife and to live with defendants; that, for the purpose of bringing about such separation, defendants obtained control of her husband's affections, and so dominated his conduct and thoughts as to wholly alienate the husband's affections from plaintiff; that the acts, conduct, and statements made by defendants were wrongful and malicious, and done for the malicious purpose of separating plaintiff's husband from her and alienating his affections.

The evidence is directly conflicting as to the material facts and issues involved. It is undisputed that Celia and George Boom were married on the 3d day of February, 1920, at Parkersburg, Iowa. Celia had lived at Aplington, and has been a school-teacher. George had been reared on a farm near Aredale, Iowa. The acquaintanceship began at Camp Dodge, during 1919, and, following a considerable courtship, they were married. Each became acquainted with the family of the other, prior to their marriage. It was arranged between them and his father's family that the young couple should take charge of the farm of the Boom family, but the details of that arrangement are in dis-

pute. After the marriage, the young couple moved to the farm, and established their home there. The parents of George had purchased a home in Dubuque, and moved from the farm to town. The young couple loved each other, and apparently got along together very well until the summer of 1920, when Mr. and Mrs. George Boom, Sr., came to the farm, and made a rather protracted stay. From this point in the history of the case, the evidence is in conflict.

There are two primary propositions presented on this appeal. One has to do with the sufficiency of the evidence to sustain the verdict, and especially that the concert of action theory or conspiracy should not have been submitted. The second primary complaint is lodged against Instruction No. 20, which concerns the rule respecting exemplary damages.

The trial court submitted the cause to the jury on both theories pleaded, to wit, (1) joint tort-feasors, and (2) concert of action or conspiracy; and two forms of verdict were included, to meet the corresponding finding of the jury in the event that a verdict for the plaintiff was returned.

The court instructed the jury on the question of concert of action substantially that:

"If plaintiff has proven by a preponderance of the credible evidence that defendants, or any two or more of them, by concert of action, and working to a common end, did maliciously engage themselves in the intention to alienate from plaintiff the affections of her husband, and you further find that defendants, or any two or more of them, maliciously by their acts, conduct, conversations, criticisms, or suggestions, and substantially in the form and manner as alleged by plaintiff, did, in fact, alienate from plaintiff the affections of her husband in some measurable degree, then plaintiff would be entitled to recover jointly against such of the defendants as you find were guilty of such concerted action; but if there was no concert of action by two or more of the defendants against plaintiff, then you must not return a joint verdict against the defendants."

The serious question presented is whether or not there was sufficient competent evidence produced and offered on the part of the plaintiff to justify the court in submitting to the jury the theory and governing legal principle of concert of action or con-

spiracy. In the light of the fact that the abstract of record contains 350 pages of printed matter, and an amendment thereto by appellee of 72 pages, the disposition of this appeal in the particular under consideration justifies this court in a statement of its conclusion, without detailing the specific and controverted facts contained in this voluminous record. Furthermore, a re-trial of this cause will be ordered, by reason of an erroneous instruction presently noted.

The fact of conspiracy or concert of action may be established by circumstantial evidence, in either a civil or a criminal action. *Hanson v. Kline,* 136 Iowa 101; *State v. Priebe,* 198 Iowa 609. In the determination of this case, a jury question was presented. The facts are in conflict. The jury was entitled to place its own interpretation on the evidence, and to determine the motive of the defendants in saying and doing what they did, and the purpose of the letters that were written. It was for the jury to say, under all the evidence, whether the elder Booms (father and mother) were merely over-indulgent, affectionate parents, and that everything they did, although misguided, was because of their love for the son George, and that they did not act with malice.

In this connection it may be pointed out that the trial court instructed that the parents of plaintiff's husband were entitled to advise and counsel with him upon matters concerning his welfare and best interests, and that any advice or counsel so given, no matter how indiscreet it may have been, or to what results it might lead, and even though it may have been the means of bringing about the separation of the son and his wife, is not actionable if, in what they said and did, they were prompted by proper motives, and were acting in good faith and without malice.

The court further instructed that the action by plaintiff against her husband is not one to redress a wrong done by him, and that, even though the jury may find that plaintiff's husband mistreated her, or was guilty of misconduct, this must not be charged against the defendants, unless the jury further finds that defendants, or some of them, maliciously alienated his affections from his wife, as charged, and that his acts or conduct were the result of influence exercised upon him by the defendants, or some of them, in a plan to so alienate his affections. An action

in alienation is, in legal effect, for damages for the loss of *consortium,* and it may be said that the court properly instructed the jury in this particular.

Damages for a joint wrong are recoverable in the absence of proof of a conspiracy, when alleged; and the averment of concert of action in a petition does not ordinarily change the nature of the action, nor add to its legal force or effect. If the acts of the different defendants are different and separate when done, they may not be called joint acts because they happen to occur at the same time, or at different times and affect the same person, neither party having any design in the matter or any control or influence over the acts of the other. Sufficient to state that, under the conflicting facts of the instant case, a jury question was presented, and that the trial court was justified in submitting the cause as it was submitted.

We now turn to the instruction (No. 20) against which exceptions were taken. This matter involves the question of exemplary damages. The jury was instructed that exemplary damages "are assessed as a punishment against a wrongdoer, in cases where the wrong is done maliciously," and that such damages cannot be allowed in a case where actual damages have not been proven. The jury was further instructed, and correctly so, as to the elements to be considered in determining the amount allowed to plaintiff "as actual damage," in the event that the jury found that the plaintiff was entitled to recover. The court, however, in an instruction immediately following the foregoing statement of the law, and in the same instruction, said:

"You will also consider the question of the allowance of exemplary damages; and if you find plaintiff suffered actual damages, you will allow plaintiff, as exemplary damages, such amount as you believe should fairly and reasonably be assessed against defendants, or some one of them, for their malicious acts, if any; but in no event should your allowance for exemplary damages be in excess of $5,000, as prayed for."

It is unquestioned law that the allowance of exemplary damages is discretionary with the jury. *Goodenough v. McGrew,* 44 Iowa 670; *Ahrens v. Fenton,* 138 Iowa 559. In the instant instruction, the language used by the court could be construed by the jury to mean that the giving of exemplary damages was man-

datory, conditioned only upon its finding that plaintiff had suffered actual damages. The words "you *will* allow plaintiff" exemplary damages are not only unfortunate, but misleading, and the jury may well have misunderstood the intent and purpose of the court in reference to this matter. By this instruction the jury was told, and could have so understood, that an allowance of exemplary damages of necessity follows from an allowance of actual damages. In other words, the jury could have understood the word "will" as equivalent to the word "must." Its use in the light of its context robbed the word of its permissive or discretionary meaning. We may presume that a jury is composed of men and women of average intelligence, but we will not presume that they are experts in matters of diction. It is not their province to construe the legal meaning of words or place a construction upon the language of the court in the instructions given. Exemplary damages are never a matter of right. They come to a plaintiff by the grace of the law. *Stricklen v. Pearson Const. Co.*, 185 Iowa 95.

We can give the words of this instruction but one interpretation, and we hold that the giving of this instruction constitutes reversible error. Wherefore, the judgment entered is—*Reversed.*

STEVENS, C. J., and ALBERT, MORLING, and WAGNER, JJ., concur.