**Randy L. BEARBOWER, Appellee,**

v.

**Dan W. MERRY, Appellant.**

**No. 60734.**

Supreme Court of Iowa.

May 17, 1978.

Michael G. Hogan and Gene R. Yagla, of Lindeman & Yagla, Waterloo, for appellant.

C. Kevin McCrindle, of McCrindle, Bergstrom & Sindlinger, Cedar Falls, for appellee.

REYNOLDSON, Justice.

The issues in this appeal are whether the tort actions for alienation of affections and for criminal conversation should be abolished. Trial court overruled defendant's motion to dismiss plaintiff's petition based on these theories. We granted permission to appeal from this interlocutory order. We now hold the action for alienation of affections should be retained, but the tort of criminal conversation is abrogated as to conduct occurring after January 1, 1978. Because the actionable conduct in this case is alleged to have occurred before that date, we affirm trial court's ruling.

I. *Origin of actions.*

These torts came to us from the common law. Their viability has not been challenged previously in this jurisdiction.

Of course it is our duty to monitor and interpret the common law, and to abandon antiquated doctrines and concepts. *Mease v. Fox,* 200 N.W.2d 791, 796 (Iowa 1972); *Haynes v. Presbyterian Hospital Ass'n.,* 241 Iowa 1269, 1274, 45 N.W.2d 151, 154 (1950). The genius of the common law is its flexibility and capacity for growth and adaptation. *Handeland v. Brown,* 216 N.W.2d 574, 577 (Iowa 1974).

In determining whether these actions should be retained we review their elements and distinguishing features:

> "The essential elements of a cause of action for alienation of affection are wrongful conduct of defendant, loss of affection or consortium and causal connection between such conduct and loss. An actual intent to alienate is not necessary if defendant's conduct is inherently wrong and tends to and does have the

effect complained of. Mere loss of the spouse's affection does not render defendant liable unless his misconduct was a substantial factor in causing such loss. The right protected is freedom from wrongful interference by another causing the loss of the love, companionship and affection of the spouse. A cause of action for alienation of affection does not necessarily, though it may, involve a loss of affection through adulterous relations. Although not essential to recovery, adultery between defendant and plaintiff's spouse may be shown in aggravation of damages.

"On the other hand, the gist of the action of criminal conversation is adultery between defendant and plaintiff's spouse. The right protected is the exclusive right of one spouse to sexual intercourse with the other."

—*Giltner v. Stark,* 219 N.W.2d 700, 704–705 (Iowa 1974)

■ While both criminal conversation and alienation of affections belong to the same class, arise from the marriage relationship, and seek damages for loss of consortium, they are separate and distinct. They afford separate theories for one recovery. *Id.,* at 704.

■ The only general defenses to an action for alienation of affections are plaintiff's consent, defendant's lack of knowledge of the existence of the marriage, and the statute of limitations. *Frank v. Berry,* 128 Iowa 223, 103 N.W. 358 (1905). A defense of privilege exists in certain circumstances. *Koehler v. Koehler,* 248 Iowa 144, 79 N.W.2d 791 (1956).

■ The only defenses to an action for criminal conversation are plaintiff's consent and the statute of limitations. See *Stumm v. Hummel,* 39 Iowa 478 (1874).

■ Because both actions are based on rights acquired by marriage, they are lost when the marriage is dissolved unless preserved in the decree. *Van Ellen v. Meyer,* 207 N.W.2d 552 (Iowa 1973); see § 598.20, The Code.

## II. *Alienation of affections.*

■ There is no dispute among members of this court concerning the role of marriage in our social structure. *Board of Dir. of Ind. Sch. Dist. of Waterloo v. Green,* 259 Iowa 1260, 1269, 147 N.W.2d 854, 859 (1967) ("The law looks with favor upon marriage and seeks in all lawful ways to uphold this most vital social institution."); see *Zablocki v. Redhail,* 434 U.S. 374, 384, 98 S.Ct. 673, 679, 54 L.Ed.2d 618, 629 (1978) ("[T]he right to marry is of fundamental importance for all individuals."); *Loving v. Virginia,* 388 U.S. 1, 12, 87 S.Ct. 1817, 1824, 18 L.Ed.2d 1010, 1018 (1967) ("Marriage is one of the 'basic civil rights of man,' fundamental to our very existence and survival."); *Reynolds v. United States,* 98 U.S. 145, 165, 25 L.Ed. 244, 250 (1879) ("Upon * * * [marriage] * * * society may be said to be built.").

Apparently our differences lie in the concept that:

"[T]he law of torts is concerned not only with the protection of interests of personality and of property, tangible or intangible, but also with what may be called 'relational' interests, founded upon the relation in which the plaintiff stands toward one or more third persons. An interference with the continuance of the relation, unimpaired, may be redressed by a tort action; and of this the relations of the family are a conspicuous example."

—W. Prosser, Law of Torts, § 124, p. 873 (4th ed. 1971)

The relevant question is whether a family member's interest in the harmony of her or his home is of sufficient magnitude to warrant judicial protection from those who intentionally would interfere with it. Note, *The Case for Retention of Causes of Action for Intentional Interference with the Marital Relationship,* 48 Notre Dame L.Rev. 426 (1972).

The reasons usually articulated by those who would abolish the alienation of affection action are thus summarized by H. Clark, Law of Domestic Relations, § 10.2, p. 267 (1968):

"The reasons underlying abolition of alienation of affections are many and persuasive. One is the opportunities for blackmail which the action provides, since the mere bringing of the action can ruin the defendant's reputation. Another is that lack of any reasonably definite standards for assessing damages and the possibility of punitive damages makes excessive verdicts likely. Still another is the peculiar light which the whole proceeding throws on the nature of marriage, leaving one with the conviction that the successful plaintiff has engaged in something which looks very much like a forced sale of his spouse's affections. Most significantly of all, the action for alienation is based upon psychological assumptions that are contrary to fact. As has been indicated, viable, contented marriages are not broken up by the vile seducer of the Nineteenth Century melodrama, though this is what the suit for alienation assumes. In fact the break-up is the product of many influences. It is therefore misleading and futile to suppose that the threat of a damage suit can protect the marital relationship. For all these reasons the abolishing statutes reflect a sound public policy and ought to be enacted more widely than they are."

This criticism, of course, proceeds from the wholly unsupported and obviously personal belief of the author that "a marriage is not broken up by outsiders if it is solidly based on the affections of the parties." *Id.,* at 266.

One logically could proceed from the equally unsupportable but nonetheless widely held belief that many marriages do not sail their course in unending calm seas and sunny weather. Rather, sometimes the voyage is beset by troublesome but navigable adverse tides and storms. Such occasional stress should not furnish a stranger grounds to wrongfully meddle.

Most marriages are not required to endure the intentional, continuous and often vindictive third-person interference disclosed by our adjudicated decisions. See, e. g., *Glatstein v. Grund,* 243 Iowa 541, 51 N.W.2d 162 (1952); *Rank v. Kuhn,* 236 Iowa 854, 20 N.W.2d 72 (1945). This leaves an inadequate sampling from which to conclude otherwise viable marriages are immune to such abnormal pressures.

We further note the criticisms advanced by *Clark,* supra, are not typical of commentators in this area:

"[I]n spite of all of the objections which have been advanced, most of the writers in this field agree that some form of action should be preserved. The purpose of these suits is simply the protection of the home, and in this modern era of increasing instability in family relations, few would discourage any means which might have a more stabilizing effect upon the family."

—Comment, "Anti-Heart Balm" Legislation Revisited, 56 Nw.L.Rev. 538, 545 (1961)

See 1 Harper and James, The Law of Torts, § 8.7, p. 629 (1956) ("[I]n the case of alienation, grievous wrongs are suffered and some of life's most important interests ruthlessly invaded. To abolish all remedy in such cases is certainly subject to serious question."); *Prosser,* supra, § 124, pp. 887–888 ("Their [statutes abolishing criminal conversation, seduction, alienation of affections] desirability is another matter. They reverse abruptly the entire tendency of the law to give increased protection to family interests and the sanctity of the home, and undoubtedly they deny relief in many cases of serious and genuine wrong.").

Abolition of the alienation tort in approximately one-third of the states has proceeded by statute except in two instances of judicial intervention. Many of those statutes were the result of notorious breach of promise of marriage cases which received widespread media condemnation in the 1930-1940 period. "[N]ewspaper emphasis has created an illusion of universality as to the evils of unfounded actions, coercive settlements or excessive verdicts which concededly exist in particular cases." Feinsinger, *Legislative Attack on "Heart Balm,"* 33 Mich.L.Rev. 979, 1008–1009 (1935). See Comment, 56 Nw.L.Rev., supra, at 540. Thoughtful writers questioned

whether justifiable resentment over abuse of the remedy of breach of promise to marry necessitated the wholesale abolition of established rights and remedies. Kane, *Heart Balm and Public Policy,* 5 Fordham L.Rev. 63, 66 (1936); see Brown, *The Action for Alienation of Affections,* 82 Am.L.Reg. (Now U.Pa.L.Rev.) 472 (1934). "After the wave of initial reform * * * momentum was lost, and the majority of states retained intact the common law tort liability for interferences with such interests." Ploscowe, Foster and Freed, Family Law, p. 150 (2d ed. 1972). It should be observed this court has not had a breach of promise to marry case before it in 30 years. See *Benson v. Williams,* 239 Iowa 742, 32 N.W.2d 813 (1948).

The alienations remedy received adverse judicial scrutiny in Louisiana and Washington.

Technically speaking, Louisiana did not abolish the action, but simply refused, as an original proposition, to recognize it. *Moulin v. Monteleone,* 165 La. 169, 115 So. 447 (1927). Louisiana is not a common-law state. Sweeney, *Tournament of Scholars Over the Sources of the Civil Code of 1808,* 46 Tulane L.Rev. 585, 586–602 (1972); Pascal, *Sources of the Digest of 1808: A Reply to Professor Batiza,* 46 Tulane L.Rev. 603 (1972); Batiza, *The Actual Sources of the Louisiana Projet of 1823: A General Analytical Survey,* 47 Tulane L.Rev. 1 (1972). The court could not find the right of action in the Civil Code. Other reasons found in the Louisiana decision included the court's view such damages were punitive, a concept not recognized in that jurisdiction; marriage is a civil contract and Louisiana does not recognize a right of damages ex delicto against one who induces another to violate his or her contract; and that, in civil law, there is no right of action for services, support, companionship or affections of a human being. Of course, none of this underlying law prevails in Iowa. The opinion lends little support for defendant's position in this case.

The other decision cited by defendant is *Wyman v. Wallace,* 15 Wash.App. 395, 549 P.2d 71 (1976), on appeal to the supreme court in that jurisdiction. Even the court of appeals of Washington restricted its ban to the action against an unrelated third party, having "in mind adult emotions, motivations, strengths, weaknesses, duties and responsibilities." *Id.,* 15 Wash.App. at 400, 549 P.2d at 74, n. 4. This tip of the judicial hat to the inevitability of irresistible emotional attachments acknowledges a view we do not accept: that marriage partners, left alone, cannot work out difficult problems. Even a shaky marital edifice ought to be permitted to collapse from its own imperfections, if it will, before a third party is authorized to kick out a cornerstone.

Other opinions balance the decisions from the Louisiana supreme court and the court of appeals of Washington, supra. The supreme court of Minnesota, en banc, rejected the arguments defendant advances here. *Gorder v. Sims,* 306 Minn. 275, 281–283, 237 N.W.2d 67, 71–72 (1975). The Illinois supreme court struck down as unconstitutional a statute abolishing the alienation action. *Heck v. Schupp,* 394 Ill. 296, 68 N.E.2d 464 (1946). The Illinois decision turned on a constitutional provision which insured every person a prompt remedy in law for all injuries and wrongs. *Id.,* 394 Ill. at 299–300, 68 N.E.2d at 466. While Iowa has no comparable constitutional provision, the concept expressed should find nurture in our decisions.

In any event, many alienation cases are brought against interfering and harassing near relatives, in which the "damage to reputation" and blackmail arguments have no applicability. Out of some 41 alienation cases reaching this court, 22 were prosecuted against immediate family members of a spouse, absent any allegations of sexual involvement. Seventeen were brought by the wife against one or both of the husband's parents. See *Koehler v. Koehler,* supra, 248 Iowa 144, 79 N.W.2d 791; *Glatstein v. Grund,* supra, 243 Iowa 541, 51 N.W.2d 162; *Wallrich v. Wallrich,* 232 Iowa 762, 6 N.W.2d 107 (1942); *Case v. Case,* 226 N.W. 922 (Iowa 1929), 212 Iowa 1213, 238 N.W. 85 (1931); *Paup v. Paup,* 208 Iowa 215, 225 N.W. 251 (1929); *Boom v. Boom,*

206 Iowa 70, 220 N.W. 17 (1928); *Holdorf v. Holdorf,* 191 Iowa 887, 183 N.W. 396 (1921); *Stilwell v. Stilwell,* 186 Iowa 177, 172 N.W. 177 (1919); *Moir v. Moir,* 181 Iowa 1005, 165 N.W. 221 (1917); *Miller v. Miller,* 154 Iowa 344, 134 N.W. 1058 (1912); *Heisler v. Heisler,* 127 N.W. 823 (Iowa 1910), 151 Iowa 503, 131 N.W. 676 (1911); *Busenbark v. Busenbark,* 150 Iowa 7, 129 N.W. 332 (1911); *Magers v. Magers,* 143 Iowa 750, 123 N.W. 330 (1909); *Hardwick v. Hardwick,* 130 Iowa 230, 106 N.W. 639 (1906); *Avery v. Avery,* 110 Iowa 741, 81 N.W. 778 (1900); *Bailey v. Bailey,* 94 Iowa 598, 63 N.W. 341 (1895), overruled on other grounds, 252 N.W.2d 421 (Iowa 1977); *Price v. Price,* 91 Iowa 693, 60 N.W. 202 (1894).

Our cases recognize the right of a spouse's parents or adult children to offer advice regarding domestic and marital matters, and presume good faith in the offer. An alienation of affections plaintiff has the burden of proving malice on the part of immediate family members, a burden not imposed as to other defendants in such actions. *Allen v. Lindeman,* 164 N.W.2d 346, 348–350 (Iowa 1969); *Glatstein v. Grund,* supra, 243 Iowa at 545–546, 51 N.W.2d at 166; *Wallrich v. Wallrich,* supra, 232 Iowa at 767–768, 6 N.W.2d at 109.

Professor Clark's assertions the remedy should be abolished because of a "lack of any reasonably definite standards for assessing damages" will not stand scrutiny. The gravamen of the alienation of affections action is loss of consortium. See *Acuff v. Schmit,* 248 Iowa 272, 276, 78 N.W.2d 480, 483 (1956); *Pyle v. Waechter,* 202 Iowa 695, 701, 210 N.W. 926, 929 (1926). Consortium is conjugal fellowship of wife and husband, and the right of each to the company, cooperation, affection and aid of the other in every conjugal relation. *Lampe v. Lagomarcino-Grupe Company,* 251 Iowa 204, 206, 100 N.W.2d 1, 2 (1959). We routinely have recognized a jury's ability to measure its value where the loss was caused negligently. *Id.;* see *Jansen v. Harmon,* 164 N.W.2d 323, 324 (Iowa 1969). Compare I.S.B.A. Uniform Jury Instructions (Civil), instruction 3.17 (Damages—Consortium) with instruction 27.8 (Aliena-

tion of Affections—Actual or Compensatory Damages).

The difficulty of translating damage to intangible rights into money judgments has deterred us not at all in other law areas. We recognize violation of the intangible right of privacy as an actionable tort. *Bremmer v. Journal-Tribune Publishing Company,* 247 Iowa 817, 821–822, 76 N.W.2d 762, 765 (1956). We permit actual damages to be awarded for the intentional infliction of emotional harm. See *Hall v. Montgomery Ward & Co.,* 252 N.W.2d 421, 423 (Iowa 1977); *Barnett v. Collection Service Co.,* 214 Iowa 1303, 1312, 242 N.W. 25, 28 (1932). We have held a plaintiff could sue for damages for emotional distress arising from breach of a funeral service contract. *Meyer v. Nottger,* 241 N.W.2d 911, 921 (Iowa 1976). We early allowed money compensation for mental pain as a component of damages for a physical impact tort. *Collins v. The City of Council Bluffs,* 35 Iowa 432, 436 (1872). In *Wardlow v. City of Keokuk,* 190 N.W.2d 439, 448 (Iowa 1971), we held a wrongful death case jury could assign a dollar value to the loss of companionship and society of a minor child.

The rationale the destroyed marriage was undoubtedly unstable and therefore no damages for alienation of affections should be permitted goes too far. Of course, mere loss of a spouse's affections does not render defendant liable unless the latter's misconduct was a substantial factor in causing such loss. *Rank v. Kuhn,* 236 Iowa at 861, 20 N.W.2d at 75. Defendant is permitted to show a prior deteriorated marital situation in mitigation of damages. *Id.,* 236 Iowa at 862, 20 N.W.2d at 77.

Similarly lacking in substance is Professor Clark's rationale that the opportunity for blackmail justifies abolition of the remedy for alienation. It already has been demonstrated, supra, that in this jurisdiction a large volume of these cases involve no alleged sexual misconduct. They therefore present no risk to "reputation," and consequently, no opportunity for blackmail. There is a palpable inconsistency between

this argument and the frequent implication the remedy should be struck down because social mores now condone such extramarital activity. If so, there should be no hazard to a potential defendant's reputation, nor, for that matter, any danger of excessive jury verdicts. There is nothing before this court to show there now is any basis in Iowa for these fears, or that the alleged abuses are occurring in this jurisdiction.

The connection defendant seeks to make between the legislative intent in our no-fault dissolution statute and the necessity to abolish alienation suits is illusory. In view of the resulting flood of dissolution litigation which clogs our courts, it is as logical to conclude the marriage relationship needs more protection from outside interference, not less. A legislature concerned enough to provide for a 60-day compulsory conciliation procedure, § 598.16, The Code, and a 90-day waiting period, § 598.19, The Code, might well perceive the desirability of any deterrent to unjustified third-party meddling during those periods in order to permit the parties to work out their differences. Cf. Peters, *Iowa Reform of Marriage Termination,* 20 Drake L.Rev. 211, 219 (1971) ("If the conciliation process is to have some hope of success, interference from outsiders and public position-taking by the parties themselves is [sic] to be discouraged.").

Finally, there is the implication courts cannot cope with issues presented by alienation cases. The spectre of unjust enrichment by unscrupulous persons, fraud, and excessive verdicts is raised. This is a retreat from our usual affirmative view typified by the statement:

"Our system of justice, correctly I believe, assumes the honesty of most people. It also assumes the ability of the adversary process, with its devices for testing credibility such as discovery, cross-examination, impeachment, the insight of juries, and penalties of perjury, to expose dishonesty."

—*Keasling v. Thompson,* 217 N.W.2d 687, 704–705 (Iowa 1974) (McCormick, J., dissenting)

That some alienation actions may be brought in bad faith (a suggestion not supported by the records in cases which have reached this court) does not provide reason to abolish all such remedies. We would resist such reasoning applied to other types of litigation. After all, "the very purpose of courts is to separate the just from the unjust causes." *Wilder v. Reno,* 43 F.Supp. 727, 729 (M.D.Pa.1942); see *Manistee Bank & Trust Co. v. McGowan,* 394 Mich. 655, 674, 232 N.W.2d 636, 644 (1975).

We hold the action for alienation of affections remains consistent with public policy in this jurisdiction and shall be retained.

### III. *Criminal conversation.*

The action which may be maintained for an isolated instance of criminal conversation presents a different situation. We are not concerned here with the right of action which accrues when the wrongdoer, for the purpose of disrupting the marriage relation, induces one spouse to separate from the other or not to return after a separation from him or her.

As we observed in *Giltner v. Stark,* supra, 219 N.W.2d at 704–705, the gist of the action of criminal conversation is adultery. The right protected is the exclusive right of one spouse to sexual intercourse with the other.

The tort has been handed down from early common law intact. Defenses which would seem applicable in terms of today's sense of fairness are nonexistent:

"At common law and in other jurisdictions where a cause of action [for criminal conversation] is recognized in favor of the husband under these circumstances, consent of the wife is no defense. The fact that the wrongdoer did not know the wife was married but believed her to be single is not a defense. The fact that the wife represented herself as single is not a defense. The fact that the wife was the aggressor is not a defense. The fact that she has been neglected or mistreated by her husband is not a defense. The fact that she and her husband were separated through his fault is not a defense. When

the case comes on for trial, moreover, the number of occasions on which the wife has had sexual relations with the defendant and with others is a highly relevant inquiry on the issue of damages."

—*Felsenthal v. McMillan*, 493 S.W.2d 729, 731 (Tex.1973) (Steakley, J., dissenting)

See *Antonelli v. Xenakis*, 363 Pa. 375, 378, 69 A.2d 102, 103 (1949). At a later date the Pennsylvania supreme court observed:

"[I]n today's society it is unreasonable to impose upon a defendant such harsh results without affording any real opportunity to interject logically valid defenses on the merits such as the role of the plaintiff's spouse in the adulterous relationship or the quality of the plaintiff's marriage prior to the occurrence of the acts constituting the tort."

—*Fadgen v. Lenkner*, 469 Pa. 272, 280–281, 365 A.2d 147, 151 (1976)

A fundamental flaw in the criminal conversation remedy, as opposed to alienation of affections remedy, is its insensitive imposition without regard to the viability of the marriage relationship, or to the fact, in a given instance, that relationship may not have been affected adversely. In short, recovery may be allowed where stability of the marriage survives unimpaired.

On the other hand, where a continuous course of adultery has undermined the marital relationship the alienation of affections remedy, left standing, would apply:

"It is still true of course that adultery will undermine most marriages. Injuries to the marital relationship resulting from the sexual indiscretion could however still be recoverable in a suit for * * * alienation of affections * * *. The real impact of abolishing the adultery action therefore is merely to increase the plaintiff's burden of proof by making him [or her] demonstrate either abandonment or a loss of affections objectively manifested by conduct other than the adulterous act itself. This in effect takes away from a complaining husband or wife the benefit of a presumption that no longer appears warranted and has in the past worked a hardship on defendants. By

channeling plaintiffs into an alienation * * * action the way would be clear for a defendant to escape liability by proving his [or her] ignorance of the marriage."

—Note, 48 Notre Dame L.Rev., supra, at 434.

The enactment of the new criminal code bears on the continued viability of the tort of criminal conversation. Although it is a common-law tort, the right to maintain a civil action for adultery previously was assured by our statute making adultery a crime. See § 702.1, The Code, 1975. Civil causes of action are available to obtain damages for injuries sustained by reason of crimes in Iowa. *Hall v. Montgomery Ward & Co.*, supra, 252 N.W.2d at 423–424. However, chapter 702 of the 1975 Code was repealed by the new criminal code, Acts 66 G.A. Ch. 1245, Ch. 4, § 526. Therefore, no statutory inhibition against eliminating the common-law tort of criminal conversation existed as of January 1, 1978.

We abolish the tort of criminal conversation in Iowa for conduct occurring after January 1, 1978.

But because plaintiff's petition in this case is based on conduct alleged to have occurred prior to that date, we hold trial court was right in overruling defendant's motion to dismiss.

We affirm the ruling appealed from.

AFFIRMED.

MOORE, C. J., and LeGRAND, REES and UHLENHOPP, JJ., concur.

RAWLINGS, J., concurs specially.

MASON, McCORMICK, and HARRIS, JJ., dissent.

RAWLINGS, Justice (concurring specially).

I concur in the result and in so doing would adopt the views expressed by Mason, J., that other defenses to the claim for alienation of affections should be recognized.

MASON, Justice (dissenting).

It is my opinion some form of action should be preserved by which the aggrieved party may seek relief from one who intentionally interferes with such aggrieved party's legally protected right to be free from such interference with his or her marital relationship causing the loss of love, companionship and affection of the spouse.

In division II the majority determines the action for alienation of affections should be retained. I agree but maintain some defenses not now recognized should be available to one against whom such a claim is asserted. The majority does not impose such a limitation on the action. Hence, I cannot agree with the result reached in division II.

In division III the majority abolished the right of recovery based on criminal conversation for conduct occurring after January 1, 1978. Since I cannot agree that a sufficient difference exists between a claim for relief based on alienation of affections and one based on criminal conversation which would permit the retention of one and the abolishment of the other, I dissent from division III.

McCORMICK, Justice (dissenting in part).

I would abolish the tort of alienation of affections as well as the tort of criminal conversation. These "heart-balm" torts are based on a false view of marriage and human nature. They denigrate marriage and debase the common law.

I. We are proud of the ability of the common law to grow and adapt to changing conditions. However, the development of the common law is not limited to creating new rights of action and expanding remedies. It should include eliminating rights and remedies which have proved to be unjust or anachronistic.

If we devote our attention only to adding to the disputes which can be litigated, we fail in our responsibility to maintain the viability of the common law and we deserve the criticism which results. In this age when a solution is sought at law for almost every human problem, we must be vigilant to prevent the court system from being used to inflict injury rather than to obtain redress for legitimate wrongs. Asserted rights and remedies which are based on erroneous assumptions fall in this class and ought to be rejected.

Certainly we should not, as the majority does, endorse decisions of other courts which have recognized the disfavor of heart-balm litigation but are content to leave the issue of eliminating this judge-made doctrine to the legislature. See *Gorder v. Sims*, 306 Minn. 275, 237 N.W.2d 67 (1975). In *Kersten Co., Inc. v. Department of Social Services*, 207 N.W.2d 117 (Iowa 1973), we said we could open the courtroom doors without legislative help. We should have equal confidence in our power to close them.

II. As recognized in the majority opinion many jurisdictions have abolished one or both of the major heart-balm torts. Moreover, despite the majority's contrary characterization, a substantial number of these jurisdictions have taken this action within the last ten years.

California, Colorado, Connecticut, Delaware, Florida, Indiana, New Jersey, New York, Oregon, Vermont, Virginia, Wisconsin and Wyoming have completely eliminated both actions.[1] Louisiana, by court decision, has refused to recognize and Arizona, Maine, Maryland, Nevada, and Oklahoma, by legislation, have completely abolished the action of alienation of affections.[2] In

---

1. Cal.Civ.Code § 43.5 (West 1954); Colo.Rev. Stat.Ann. § 13–20–202 (1973); Conn.Gen.Stat. § 52–572b to 52–572f (1977); Del.Code Ann. 10 § 3924 (1975); Fla.Stat.Ann. 771.01 (1976); Ind.Stat.Ann. 34–4–4–1 (Burns Supp.1977); N.J.Stat.Ann. § 2A:23–1 (1952); N.Y.Civ.Rights Law 80-a (McKinney 1976); Or.Rev.Stat. 30.-840 and 30.850 (1977); Vt.Stat.Ann., tit. 15, § 1001 (Supp.1977); Va.Code § 8.01–220 (1977); Wis.Stat.Ann. 248.01 (Supp.1977–1978); and Wyo.Stat.Ann. § 1–728 (1959).

2. *Moulin v. Monteleone*, 165 La. 169, 115 So. 447 (1927); Ariz.Rev.Stat. § 25–341 (Supp. 1977–1978); Maine Rev.Stat.Ann., tit. 19 § 164 (Supp.1977–1978); Md.Ann.Code, Courts and

addition, Michigan, Washington and Pennsylvania have abrogated the alienation of affections action for unrelated parties.[3] Michigan and Pennsylvania have terminated the action for criminal conversation.[4] While Illinois has not abolished either action, it has imposed severe limitations on the damages which may be recovered.[5] Finally, Alabama permits only equitable relief for either alienation of affections or criminal conversation.[6]

The trend is to abolish these actions, and good reasons exist for doing so. The majority finds these reasons persuasive as to the tort of criminal conversation but not as to alienation of affections. I do not believe we can justify retaining either tort.

III. It is strange that one should be accused of believing the marital relationship is not worth preserving because of a belief the existence of the alienation tort does not serve that end. The accusation begs the question.

It is also strange that the alienation of affections tort is held to be an essential means to preserve marriage without any supporting data or analysis to show it does in fact further that objective. Moreover, it is a considerable leap from quoting legal writers who endorse "some form of action" to preserve the family to a holding that the alienation tort will accomplish that purpose.

Although the majority opinion attacks the arguments for abolishing the alienation of affections action which are advanced in H. Clark, Law of Domestic Relations, § 10.2 at 267 (1968), I do not think it responds to Clark's most telling statements:

* * * Still another is the peculiar light which the whole proceeding throws on the nature of marriage, leaving one with the conviction that the successful plaintiff has engaged in something which

looks very much like a sale of his wife's affections. Most significantly of all, the action for alienation is based on psychological assumptions that are contrary to fact.

I agree with Professor Clark because I do not believe one spouse has a proprietary interest in the love of the other, and I do not believe an action for alienation of affections is a rational means of preserving a marriage.

When heart-balm torts originated in the English common law they were available only to a husband. They had their basis in property concepts. The husband was said to be superior to his wife and thus to own her affections, companionship and services. When these torts were perpetuated in Iowa, instead of rejecting the fiction that one spouse owns the love which it is the other spouse's decision to give or deny, this court simply recognized a reciprocal fiction in the case of the wife. See *Price v. Price*, 91 Iowa 693, 698, 60 N.W. 202, 203 (1894) ("As it is a valuable property right when due the husband, it must be so regarded when due the wife."). While I agree the broader concept of a right of consortium has validity in the personal injury damages context, I do not believe spousal love is property which is subject to theft or alienation. It is simply a contradiction in terms to say it is. This should be sufficient reason in itself to abolish the alienation tort, but it is not the only reason.

Many authoritative studies have been made of the nature of marriage and the cause, prevention, and cure of marital failure. I have searched among them in vain for any support for the majority's assumption that the existence of the alienation tort is a deterrent to marital breakdown or a device for protecting the family unit. See

Judicial Proceedings § 5–301 (1975); Nev.Rev. Stat. 41.380 (1975); Okl.Stat.Ann. tit. 76, § 8.1 (Supp.1977–1978).

**3.** Mich.Comp.Laws 551.301 and 551.302 (1967); *Wyman v. Wallace*, 15 Wash.App. 395, 549 P.2d 71 (1976) (review pending in the Supreme Court of Washington); Pa.Stat.Ann. tit. 48, § 170 (Purdon's 1965).

**4.** Mich.Comp.Laws 551.301 (1967); *Fadgen v. Lenkner*, 469 Pa. 272, 365 A.2d 147 (1976).

**5.** Ill.Rev.Stat. Ch. 68 §§ 34–44 (Smith-Hurd 1959).

**6.** Ala.Code § 6–5–331 (1975); *Henley v. Rockett*, 243 Ala. 172, 8 So.2d 852 (1942).

R. Anshen, *The Family: Its Function and Destiny*, (Rev. Ed. 1959); J. Sirjamaki, *The American Family in the Twentieth Century* (1953); R. Cavan, *The American Family* (Fourth Ed. 1969); P. Landis, *Making the Most of Marriage* (Fourth Ed. 1970); P. Popenoe, *Marriage is What You Make It* (1969); C. Broderick, *A Decade of Family Research and Action* (National Council on Family Relations, 1971); W. Lederer and D. Jackson, *The Mirages of Marriage* (1968).

A common denominator runs through these studies. It is that a marriage is a union of individuals. They marry for motives which are frequently nonrational. They each bring into the relationship many complicated expectations and desires which are a product of an elaborate process of growth and social conditioning. Despite the marriage the parties retain their individuality. During its course a constant process of interaction occurs. Success of the marriage depends on the ability and willingness of each spouse to make the constant adjustments necessary because of the individuality of the other. Openness, equality, sharing, love, sacrifice, a capacity for growth, emotional maturity and a forgiving spirit are essential components of a stable and viable marriage.

The disintegration of a marriage is ordinarily as complex a process as is its integration. It seldom occurs overnight. It starts from within. It is not caused by only one factor or through some imperfection of only one of the spouses. Any third person who kicks at the cornerstone of a shaky marriage will not bring it down without active support from one or both of the parties. It is simplistic and unrealistic to suppose the edifice will be held together either so long as or because spouses have the right to obtain vengeance in the form of damage suits against the third person. Although a recovery of damages will punish the third person and sooth the ego while enriching the purse of the plaintiff, it is hardly calculated to be a constructive influence in maintaining or restoring a mature and stable marriage between two individuals with free will and separate identity.

An early reaction to marital failure is the tendency to place all the responsibility for it on someone else. This is a process of self-defense. The fault divorce system provided a mechanism for playing out this fantasy, and the alienation of affections and criminal conversation torts serve the same purpose.

Over the years the public became aware of the hypocrisy, bitterness and emotional stress involved in the fault divorce system, and in 1970 our legislature enacted the dissolution law which eliminated the necessity of proving fault as a basis for terminating a marriage. See *In re Marriage of Williams*, 199 N.W.2d 339, 344 (Iowa 1972).

The disuse and disfavor of alienation of affections and criminal conversation torts, reflected by the infrequency with which such cases have reached this court in recent years, result from the same considerations. These torts are antithetical to the goal they purport to foster. They are not constructive, but destructive. They do not build, but destroy. They bring out the worst in human nature in the guise of vindicating marital rights. They denigrate human dignity by reducing marital values to monetary terms. They provide a forum for vindictiveness and posturing self-justification.

Moreover, because the very bringing of such cases is sufficient to damage reputations, the threat to file them constitutes a device for the unscrupulous to coerce an unjust payment as the price for avoiding litigation. It does not matter that a jury might ultimately deny the merits of the claim.

Heart-balm actions arise from the same motives and serve no nobler purpose than the stoning of the adulteress condemned in the New Testament or the affixing of the scarlet letter decried by Hawthorne, and they have no more to do with protecting marriage and the family than either of those events.

HARRIS, J., joins in this dissent.